CHROMALLOY AMERICAN CORPO-
RATION, Plaintiff,

v.

ALLOY SURFACES CO., Inc., a Delaware corporation, and George H. Cook, Defendants.

Civ. A. No. 3640.

United States District Court,
D. Delaware.

July 25, 1972.

William O. LaMotte, III, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., John A. Mitchell, Robert D. Spille and Garo A. Partoyan, of Curtis, Morris & Safford, New York City, of counsel, for plaintiff.

Nathan Bakalar, of Connolly, Bove & Lodge, Wilmington, Del., Irving Parker and Victor M. Metsch, of Jacobs, Persinger & Parker, New York City, of counsel, for defendants.

## MEMORANDUM OPINION AND ORDER

LATCHUM, District Judge.

This suit was brought by Chromalloy American Corporation ("Chromalloy") seeking injunctive relief and an accounting for damages against the defendants, Alloy Surfaces Co., Inc. and George H. Cook, for alleged infringement of United States Patent No. 3,257,230 ("the '230 patent") entitled "Diffusion Coating for Metals" issued on June 21, 1966 to Rich-ard P. Seelig and Richard L. Wachtell and assigned to Chromalloy. The defendants counterclaimed for a judgment declaring the '230 patent invalid and unenforceable for a number of reasons.

Following a trial by the Court on the separate issues raised by the defendants' counterclaim, the Court held on March 14, 1972: (1) that the '230 patent was invalid because Chromalloy, in violation of 35 U.S.C. § 102(b), placed the subject matter of the patent "on sale" in this country more than one year before it applied for the patent, 339 F.Supp. 859–871 (D.Del.1972), and (2) that the patent was also unenforceable because during its prosecution in the Patent Office the applicants failed to disclose material information which amounted to misrepresentations transgressing equitable standards of conduct owed to the public in return for the patent monopoly. 339 F.Supp. 872–876 (D.Del.1972).

The defendants, contending from the beginning that this was an "exceptional case", had previously moved for an allowance of an award for attorney fees under 35 U.S.C. § 285. Upon handing down its March 14, 1972 opinion, this Court scheduled a fee hearing on defendants' motion to be held on April 7, 1972. For various reasons the hearing was postponed to May 23, 1972. However, immediately before the scheduled fee hearing, Chromalloy advised the Court and the defendants that it had recently discovered new evidence which required it to file a motion to reopen a portion of the issues decided at the earlier trial.

On May 26, 1972 Chromalloy filed its formal motion under Rules 52(b) and 59(b), F.R.Civ.P., requesting (a) a partial new trial, (b) an amendment of the Court's findings and conclusions of March 14, 1972, and (c) additional new findings and conclusions.[1] This is the motion presently before the Court.

The reopening sought is not directed in any respect to the Court's holding

that the '230 patent is invalid because the invention was "on sale" more than one year before the application was filed in violation of 35 U.S.C. § 102(b). Rather the motion is directed solely to the Court's holding, and findings relevant thereto, that the '230 patent is unenforceable because of the applicants' inequitable conduct in procuring the patent.[2] Chromalloy is frank to say that the ultimate objective of its present motion is to achieve a reversal of the Court's holding that the '230 patent was obtained by fraud or by other conduct that renders the patent unenforceable, or at least to establish that Chromalloy's conduct was not of a character sufficient to make this case "exceptional" for an award of attorney fees to the defendants under § 285.

Chromalloy's motion is based on newly discovered evidence which it maintains bears directly on the Court's findings that the oath accompanying the CIP application filed on March 24, 1964 was false in material respects because it misrepresented that no foreign patent applications had been filed on the invention [the subject matter common to the parent application filed on April 17, 1959] when in fact the applicants had filed eight foreign applications corresponding to the 1959 parent application, and the corresponding British application had matured into a British Patent Specification published on November 28, 1962.[3]

The newly discovered evidence relied upon by Chromalloy appears in an exchange of letters between Henry Kolin, Assistant Patent Counsel for Atomics International, a division of North American Rockwell Corporation, and the United States Patent Office in June and August of 1964 regarding the completion of the CIP oath. The affidavit supporting Chromalloy's present motion indicates that on June 28, 1964, Mr. Kolin wrote

to the Commissioner of Patents[4] as follows:

> "Information is respectfully requested as to the completion of the Oath in a continuation-in-part application (Form 18 of page 106 of Rules of Practice).

> It is noted that Commissioner's Order No. 1239 states that no statement need be filed in the Oath with respect to any foreign application filed *subsequent* to United States filing. Is this order equally applicable to the Oath in a continuing application containing additional subject matter?

> That is, where an applicant has filed several applications in foreign countries on the parent case disclosure, all within 12 months *following* the filing date of the parent application, is it required that these subsequently filed applications necessarily be identified in the first section of the Oath relating to foreign filed applications of the United States parent application?

> Your remarks as to these requirements would be appreciated."

Under date of August 26, 1964, Mr. Kolin received a reply[5] over the signature of J. Schimmel, Deputy Solicitor of the Patent Office which reads:

> "Reference is made to your letter of June 12, 1964 requesting advice as to whether the oath in a continuation-in-part application must necessarily identify foreign applications filed subsequent to the filing date of the parent U.S. application.

> The answer to your inquiry is in the negative. There is no need of referring to subsequently filed foreign applications in the ordinary situation; therefore, there is no need to do so in the continuation-in-part. Form 18 in the Rules of Practice should be so interpreted."

---

2. 339 F.Supp. 872–876.

3. Id. at 872.

4. Docket Item No. 112.

5. Id.

Chromalloy points out and contends: first, that this correspondence is newly discovered evidence because it was unknown to Chromalloy and its counsel at the time of trial and they had no way of knowing of its existence until Mr. Kolin wrote to the attorneys for both parties in this case on May 18, 1972;[6] second, that Mr. Schimmel's letter opinion of August 26, 1964 to Mr. Kolin was directly contrary to Mr. Schimmel's September, 1971 trial testimony that the filings of foreign applications in 1960 corresponding to the U.S. parent application of 1959 should certainly have been disclosed in the CIP application as required by the oath which accompanied it;[7] and finally, that Mr. Schimmel's 1964 opinion, signed by him as Deputy Solicitor of the Patent Office, establishes a direct contradiction of his trial testimony, as defendants' expert, and thus calls into substantial doubt other testimony which he gave relating to the effect of the publication of the British Patent in 1962 which corresponded to the U.S. parent application and upon which this Court appeared to rely in making its decision.[8]

For the reasons hereafter stated, Chromalloy's motion will be denied.

■■■ A motion for a new trial or to reopen a case to amend the trial court's findings and conclusions is addressed to the discretion of the Court. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331–332, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). Newly discovered evidence refers to evidence of facts existing at the time of trial of which the aggrieved party was excusably ignorant. To support such a motion on the ground of newly discovered evidence, the evidence must have been discovered since trial, must be material and not merely accumulative or impeaching, and its admission, upon reopening, would probably produce a different result. Giordano v. McCartney, 385 F.2d 154, 155 (C.A.3, 1967); Eastern Air Lines, Inc. v. United States, 110 F.Supp. 499, 500 (D.Del. 1953).

■■■ Chromalloy has failed to meet these criteria in at least two respects. While the Kolin-Schimmel correspondence can be regarded as newly discovered evidence in the sense that Chromalloy was excusably ignorant of it at the time of trial, it is not of such a strong and convincing character as to completely discredit all of Schimmel's trial testimony or to render a different result reasonably certain.

First, this Court made the following finding in its earlier opinion:

"The applicable form of oath of the Patent Office in March, 1964, namely Form 18, required the applicants to identify any previously filed foreign

---

6. Mr. Kolin had no previous connection with either party to this suit. Only after he had read the Court's opinion of March 14, 1972 in 173 U.S.P.Q. 295 did he send counsel copies of his 1964 correspondence with the Patent Office.

7. Tr. 857.

8. Schimmel's affidavit, filed in opposition to Chromalloy's motion, states: (1) that he has no recollection of the Kolin letter or of having drafted or reviewed the response thereto bearing what appears to be his signature, (2) that now having recently reviewed the correspondence, he could not have drafted the response because (a) Kolin's letter was purportedly based upon Commissioner's Order No. 1239 which he knew at the time was obsolete and he would have so informed Kolin, (b) he would have also pointed out that Kolin had misstated the substance of the obsolete order, and (c) since he had been personally involved in drafting the Form 18 Oath, in effect in 1964, he knew it called for the identification of foreign applications about which Kolin inquired, (3) that nothing in the August 26, 1964 response approved a false oath, and (4) he has reviewed his trial testimony, including specifically his testimony concerning the oath, and he reaffirms it despite the Kolin-Schimmel correspondence. (Docket Item No. 118, Schimmel Aff'd).

patent application corresponding to the United States parent application filed April 17, 1959." [9]

This finding was made completely independent of Schimmel's testimony and was based entirely on the plain and unambiguous language of Form 18, the appropriate oath for a CIP application. That oath clearly required an applicant to complete the following averments, which appear twice in the oath and refer, the first time, to the subject matter common to the parent application. The required averment reads:

> "and no application for patent on said invention has been filed by him or his representatives or assigns in any country foreign to the United States, except as follows ————." [10]

The information required to be disclosed by the averment of Form 18 was plainly stated in uncomplicated and understandable language; its meaning does not, and did not, require the aid of parol or extrinsic evidence. It called for the filed foreign patent applications, which corresponded to the subject matter common to the United States parent application, to be identified in the blank space appearing after the "except as follows" phrase. The Court's finding in this regard was in no way influenced by Schimmel's testimony nor would the finding have been otherwise had the Court previously known of the Schimmel-Kolin correspondence. If the 1964 Schimmel opinion to Kolin construed Form 18 as not requiring such a disclosure, the Court would have found that conclusion to be clearly incorrect in view of the plain language of the oath. On the other hand, if the Schimmel opinion meant that the above-quoted provision of the Form 18 oath could have been omitted and the altered oath would still have been acceptable to the Patent Office, this would have been a matter wholly immaterial to the facts of this case.

This is so because the applicants here did not merely omit the references to the earlier filed foreign counterparts of the parent application but went even further and affirmatively and falsely averred that no such filings had taken place. Chromalloy's CIP oath flatly stated:

> "and that no application for patent on said invention has been filed by us or our representatives or assigns in any country foreign to the United States." [11]

This averment in the Form 18 oath was untrue when it was made in March, 1964. The true facts were, as later admitted, that Chromalloy had filed between April 11 and 19, 1960 eight foreign patent applications corresponding to the United States parent application filed on April 17, 1959.[12] Certainly, there is nothing in the Schimmel-Kolin correspondence which appears to approve or countenance any such affirmative misrepresentation.

Furthermore, after much effort by the defendant to secure an answer to an interrogatory, Chromalloy in May, 1969 conceded that a misstatement had occurred by "an inadvertent omission in the Oath attached to the application for the patent in suit, the omission being an identification of foreign application corresponding to the parent application. . . ." [13] Thus, Chromalloy at that time had no difficulty in recognizing that the CIP oath was untrue when it was made.

Second, even if it were assumed *arguendo* that the 1964 CIP oath was not false in denying the filing in 1960 of the eight foreign counterparts of the U.S. parent application, that would not affect the conclusion that the '230 patent is unenforceable. This is true because, in addition and independent of the false CIP oath, the Court found that Chromalloy (1) concealed from the Patent Office

---

9. 339 F.Supp. at 872.

10. DX 101; cited in Fed.Reg. of Dec. 22, 1959 as § 3.18, DX 100.

11. DX 8, p. 34.

12. Pre-trial Order par. C–6.

13. Docket Item No. 18, pp. 6–7.

the 1962 publication of the British counterpart patent to avoid the bar of 35 U. S.C. § 102(b), (2) affirmatively misrepresented in its submission that the "U" process invention antedated the "SA" process invention and that each process was a *species* of the *genus* disclosed in the CIP application, and (3) affirmatively misrepresented that Seelig and Wachtell jointly were the first inventors of *any* species within the genus.[14] Each of the misrepresentations stands on its own and cannot be affected by the Schimmel-Kolin correspondence. Because the concealment of the published British patent and the false affirmative statements were highly material, as detailed in the earlier opinion, they misled the Patent Examiner. This conduct, even if Schimmel had never testified, and wholly independent of the truth or falsity of the CIP oath, would have compelled the conclusion that the '230 patent was unenforceable in any event. No different decision would have resulted whether or not Schimmel had testified. Consequently, the newly discovered evidence is too oblique and peripheral to produce a different result.

See also D.C., 334 F.Supp. 1216.