**BELL TELEPHONE LABORATORIES, INCORPORATED, Plaintiff,**

v.

**HUGHES AIRCRAFT COMPANY and General Instrument Corporation, Defendants.**

**Civ. A. No. 74–238.**

United States District Court, D. Delaware.

Oct. 26, 1976.

---

**18**

Richard F. Corroon, and Peter M. Sieglaff, Potter, Anderson & Corroon, Wilmington, Del., for plaintiff; Albert E. Fey, and Robert C. Morgan, Fish & Neave, Edward Dreyfus, New York City, Peter V. D. Wilde, Murray Hill, N. J., of counsel.

Thomas S. Lodge, Connolly, Bove & Lodge, Wilmington, Del., for defendant Hughes Aircraft Co.; Dugald S. McDougall, and Melvin M. Goldenberg, McDougall, Hersh & Scott, Chicago, Ill., Robert Thompson, Los Angeles, Cal., of counsel.

Andrew G. T. Moore, II, Connolly, Bove & Lodge, Wilmington, Del., for defendant General Instrument Corp.; Harold James, James & Franklin, New York City, of counsel.

## OPINION

CALEB M. WRIGHT, Senior Judge.

### I. PROCEEDINGS.

Plaintiff Bell Telephone Laboratories ("BTL") filed suit under 35 U.S.C. § 291[1] against defendants Hughes Aircraft Co. ("Hughes") and General Instruments Corp. ("GI") to determine priority of their respective patents related to methods of making silicon-gate field-effect transistors.[2] GI filed an answer to plaintiff's complaint and a response to a motion to dismiss brought by Hughes, but thereafter offered no contest in this action.[3] Shortly after its withdrawal in this action, GI filed a formal abandonment of contest in interference proceedings before the Patent Office involving the same three parties. In April, 1976, prior to the filing by this Court of a decision on the priority between BTL and Hughes, BTL moved for entry of final judgment against GI. The Court refrained from acting on BTL's motion pending that decision. On July 19, 1976, this Court awarded priority to BTL's Kerwin patent over Hughes' Dill patent, on the basis of an earlier conception date and diligence in reduction to practice. As GI had not participated in the trial on priority, the Court could make no findings of fact with respect to the priority of the Watkins' patent. In response to an order to show cause why final judgment should not be entered, GI filed a motion to reopen the case for the purpose of entering evidence of the conception and reduction to practice dates of the Watkins invention. Presently before the Court are both GI's motion to reopen and BTL's earlier motion for entry of judgment. The issues have been briefed and argued before the Court, and are now ripe for decision.

In a prior action between Hughes and GI on the priority of the silicon-gate patents, this Court awarded GI a conception date of sometime prior to March 30, 1965 and a constructive reduction to practice date of

---

1. 35 U.S.C. § 291 provides:

The owner of an interfering patent may have relief against the owner of another by civil action, and the court may adjudge the question of the validity of any of the interfering patents, in whole or in part. The provisions of the second paragraph of section 146 of this title shall apply to actions brought under this section.

2. The following patents are involved in this action: #3,475,344 Kerwin (BTL); #3,544,399 Dill (Hughes); #3,576,478 Watkins (GI).

3. At oral argument on the Hughes' motion to dismiss, Mr. James, attorney for GI, stated to the Court that: "In this action, we are not going to make any opposition. We ask leave to withdraw our motion to amend the answer. We withdraw our opposition to Mr. McDougall's motion. We simply will offer no contest in this interfering patent suit. In effect, we are giving up our patent." Transcript of Hearing of March 16, 1975, page 3.

November 17, 1966.[4]  Hughes was awarded a conception date of May 1, 1966, and a reduction date of October 26, 1966.  GI was therefore the first to conceive and the last to reduce to practice with respect to Hughes.  On the basis of a finding that GI did not demonstrate diligence between conception and reduction, the Court held that the Dill patent was entitled to priority.

In the present suit, Hughes and BTL stipulated to the Hughes dates determined by this Court in the prior *Hughes v. GI* infringement action (i.e., May 1, 1966 and October 26, 1966).  After trial, the Court awarded BTL a conception date of February–March, 1966 and a reduction to practice date of December, 1966–January, 1967. With respect to Hughes, BTL was found to be first to conceive but last to reduce to practice.  The Court found that BTL demonstrated diligence in the intervening period, and accordingly awarded priority to BTL.  In footnote 3 of its opinion, the Court noted that it could not make a substantive determination with regard to the priority of invention between GI and BTL, as there was no attempt by either party to establish the relevant dates.[5]

GI now argues in support of its motion that the dates established in the two decisions demonstrate that none of the parties should be awarded priority.  If the dates awarded GI in the first action are used, GI was first to conceive but last to reduce to practice with respect to Hughes, but first to conceive and first to reduce to practice with respect to BTL.  As against BTL, then, GI's

lack of diligence would be immaterial.  Assuming *arguendo* that the dates urged by GI had been established or stipulated in this action, none of the parties would be entitled to priority.  GI has urged that entry of judgment against 'it on the question of priority would therefore be inconsistent with the findings of the Court, and would result in placing GI in the unjust position of being the "only entity in the entire semiconductor industry who cannot defend itself against Bell in this connection."[6]  BTL responded that the dates awarded GI in the prior action are not res judicata as against BTL, who was not a party to that action.  Accordingly, BTL urges that a reopening of the case for introduction of evidence by GI would also have to encompass introduction of counter-evidence by BTL as to GI's dates.  Additionally, BTL argues that the Court would have to permit BTL to reopen the question of its own dates, since it has not had an opportunity to fully and fairly litigate those dates with respect to GI.

GI contends further that its abandonment of contest in these proceedings was limited to its interest in affirmatively prosecuting its rights under the Watkins patent. That is, GI has abandoned any claim to priority of the Watkins patent over the Kerwin and Dill patents, but seeks to reserve the right to establish prior dates of conception and reduction to practice in order to defeat enforcement of the Kerwin patent.  BTL contends, however, that no such distinction was made or indeed could be made by GI, and that GI is therefore

---

4. *Hughes Aircraft Co v. General Instrument Corp.*, 374 F.Supp. 1166 (D.Del.1974) (hereinafter *Hughes v. GI*).

5. Footnote 3 states that:
    BTL did not attempt to prove a date of conception prior to March of 1965, the date of conception awarded to GI.  374 F.Supp. 1171.  However, since BTL was not a party to the prior suit, it is not bound by any of this Court's findings in that action.  Further, there was no attempt here to establish GI's March, 1965 date.  Accordingly, this Court need not address the issue of whether, under 35 U.S.C. § 102(g), a March, 1965 conception by GI would moot the issue of BTL's dili-

gence, assuming BTL conceived before Hughes, but after March, 1965, and reduced to practice after November 17, 1966.
    *Bell Telephone Laboratories, Inc. v. Hughes Aircraft Co. & General Instrument Corp.*, 422 F.Supp. 372 (D.Del.1976).

6. GI argues that other firms in the semiconductor industry, not involved in this action, will be able to prove the Watkins dates in defense against suits by BTL for infringement or licensing fees, while it will be barred from asserting its own dates in similar actions.  See GI's Memorandum in Support of GI's Motion under Rule 59 and in Opposition to Bell's Motion for Entry of Final Judgment against GI, at 5.

estopped by the representations made by its attorney in open court from offering any evidence to dispute the priority of the Kerwin patent.

## II. DISCUSSION.

The motion filed by GI to reopen [7] does not fit neatly into any of the Federal Rules of Civil Procedure, because of the unique posture of the case. GI has styled its motion as one for a new trial under Rule 59, but acknowledges that certain elements of Rule 60, Relief from Judgment or Order, are relevant.[8] Both Rule 59 and Rule 60 presume, however, that the Court has had an opportunity to consider the merits of the action, whether on a motion for summary judgment, or after presentation of evidence at trial. In the present case, defendant GI withdrew from participation in the proceedings, and the Court has had no opportunity to evaluate the merits of GI's Answer. In that respect, the motion resembles a Rule 55(c) motion to set aside a default judgment. In view of the mandate of Rule 1 to construe the Federal Rules "to secure the just, speedy, and inexpensive determination of each action," the Court will entertain the motion as one under either Rule 59, Rule 60(b) or Rule 55(c), and will consider relevant the standards developed under each of those rules.

■ Under Rule 59, a new trial may be granted in a non-jury action "for any of the reasons for which rehearings have heretofore been granted in suits in equity." Although the rule does not enumerate those reasons, the most often-mentioned grounds for a new trial, in a non-jury action, are manifest error, either of law or fact, or newly discovered evidence.[9] Unless the court finds that it would be unjust to enforce the decision rendered, a party will not be permitted to reopen a case for the purpose of introducing evidence to meet the issues raised at trial, when that evidence was available and known to the party at the time of trial. *See Eastern Air Lines v. U. S.,* 110 F.Supp. 499 (D.Del.1953); *compare Patterson v. National Life & Accident Ins. Co.,* 183 F.2d 745 (6th Cir. 1950) *with Haugen v. U. S.,* 153 F.2d 850 (9th Cir. 1946). Similarly, a party which has litigated the case under one legal theory generally should not be permitted to reopen in order to introduce evidence in support of another legal theory, or in support of issues not raised by that party at trial. If the party had an opportunity to litigate those issues, but chose not to, it should not be permitted to prolong the litigation any further. *See Zenith Corp. v. Hazeltine Research Corp.,* 401 U.S. 321, 332, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). Otherwise, no litigation would end, so long as a creative attorney could develop alternative theories of relief.

■ Rule 60(b) provides for relief from a final judgment, order or proceeding for a number of reasons, including:

(1) mistake, inadvertence, surprise or excusable neglect;

. . . . .

(6) any other reasons justifying relief.

In *Caracci v. Brother International Sewing Machine Corp. of La.,* 222 F.Supp. 769 (E.D.La. 1963), *aff'd,* 341 F.2d 377 (5th Cir. 1965), a motion to reopen for the purpose of introducing additional evidence after close of trial, but prior to rendering of decision was allowed, although the court acknowledged that the motion was a "cannibalization of those qualities found in Rules 59 and 60." The court indicated further that it looked with more favor on a motion to reopen prior to decision than a motion after decision but prior to entry of findings of fact and conclusions of law.

---

**7.** Although the Court has before it both GI's motion to reopen and BTL's motion for entry of judgment, discussion will be limited to the former, as decision on GI's motion will be dispositive of all issues involved.

**8.** Professor Moore has suggested that a motion to reopen a case to take additional testimony where the court has the case under advisement is not a motion for a new trial under Rule 59, as the purpose of the motion is not a retrial, but an opportunity to offer additional testimony so the trier of fact can decide the entire matter at one trial. As the case nears the entry of judgment, the similarity to a Rule 59 motion increases. 6A Moore's Federal Practice ¶ 59.-04[13].

**9.** See 6A Moore's Federal Practice ¶ 59.07.

The first subsection has been applied primarily in cases where the failure to introduce evidence was not willful, and the moving party would be deprived of a full and fair hearing through no fault of its own.[10] If the decision not to ·defend, or not to introduce certain evidence, was made consciously, on the basis of full knowledge of the issues involved, the party cannot claim mistake, inadvertence, surprise, or excusable neglect. *See generally, Schattman v. Texas . Employment Commission,* 330 F.Supp. 328, 330 (D.Tex.1971).

Subsection (6) gives the court leeway to grant relief in cases of extreme hardship where relief would not be available under any of the other provisions. *See Transit Casualty Co. v. Security Trust Co.,* 441 F.2d 788, 792 (5th Cir. 1971), *cert. denied,* 404 U.S. 883, 92 S.Ct. 211, 30 L.Ed.2d 164. Relief under subsection (6) has been granted in cases where the judgment was obtained by the improper conduct of the party in whose favor it was rendered or resulted from the excusable default of the party against whom it was directed, under circumstances not covered by subsections (1) through (5), which require the application of subsection (6) in order that the case be tried on its merits and justice be done. *U. S. v. Cato Brothers, Inc.,* 273 F.2d 153, 157 (4th Cir. 1959), *cert. denied,* 362 U.S. 927, 80 S.Ct. 753, 4 L.Ed.2d 746; 11 Wright & Miller Federal Practice and Procedure § 2864. The provision cannot be used, however, to relieve a party from the duty to take legal steps to protect his interests. *John E. Smith's Sons Co. v. Lattimer Foundry & Machine Co.,* 19 F.R.D. 379 (M.D.Pa.1956), *aff'd,* 239 F.2d 815 (3rd Cir. 1956). If a party makes a free and conscious choice regarding the conduct of the

litigation, he cannot be granted relief under Rule 60(b)(6) from the consequences of that · decision. *See Ackermann v. U. S.,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950) (decision not to appeal); *Lubben v. Selective Service System Local Bd. No. 2,* 453 F.2d 645, 651 (1st Cir. 1972) (decision not to appeal); *but see Klapprott v. U. S.,* 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949) (relief granted where unusual circumstances showed failure to appeal was excusable). As the court pointed out in *DeLong's, Inc. v. Stupp Bros. Bridge & Iron Co.,* 40 F.R.D. 127, 130 (E.D.Mo.1965):

> In the cases [cited by plaintiff in support of motion under Rule 60(b)(6)], the movants had been denied, by reasons largely beyond their control and to their extreme prejudice, an opportunity to litigate the true merits. These cases provide no support to a party who, by his own calculated choice, has put himself in the position from which he seeks relief.

In that case, plaintiff was not permitted to vacate the dismissals of two defendants under Rule 60(b)(6) where plaintiff has made a calculated choice to dismiss those defendants in order to gain an earlier trial setting.

Rule 60(b) also applies to a motion to set aside a default judgment under Rule 55(c). When applied to default judgments, the standards of Rule 60(b) are generally interpreted with greater liberality, and doubts resolved in favor of the moving party, in view of the preference for consideration of a case on its merits. *Spann v. Commissioners of District of Columbia,* 443 F.2d 715, 717 at n. 1 (D.D.C.1970). This does not mean, however, that the party in default is automatically entitled to relief. Even assuming that the default was excusable under 60(b), the party must make a

---

**10.** The subsection has been applied most often to relieve a party of the effect of an inadvertent failure to comply with the pleading requirements and time limits of the court, when that failure is due to lack of counsel, inability to communicate with counsel, or excusable neglect of counsel. *See, e. g., Kinnear Corp. v. Crawford Door Sales Co.,* 49 F.R.D. 3 (D.S.C. 1970) (lack of counsel); *A. F. Dormeyer Co. v. M. J. Sales & Distribution Co.,* 461 F.2d 40 (7th Cir. 1972) (attorney's unfamiliarity with local rules); *Vindigni v. Meyer,* 441 F.2d 376 (2d Cir. 1971) (disappearance of counsel); *Naples v. Maxwell,* 368 F.2d 219 (6th Cir. 1966), *cert. denied,* 386 U.S. 971, 87 S.Ct. 1165, 18 L.Ed.2d 131 (attorney's preoccupation with other matters); *Trueblood v. Grayson Shops of Tennessee, Inc.,* 32 F.R.D. 190 (E.D.Va.1963) (miscalculation as to date summons served); 11 Wright & Miller Federal Practice and Procedure § 2858.

clear showing that the decision might be different if the case were tried on its merits. *Gomes v. Williams,* 420 F.2d 1364, 1366 (10th Cir. 1970); *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242 (3rd Cir. 1951). If the party cannot demonstrate that a meritorious defense would be supported by the evidence sought to be introduced, the motion must be denied. *See, e. g., Rue v. Feuz Construction Co.,* 103 F.Supp. 499 (D.D.C. 1952).

■ The common denominator of Rules 55(c), 59 and 60(b) is the sound discretion of the trial court.[11] Any reopening of a case, whether prior to or following entry of judgment, involves some delay, expense and prejudice to the other party. The Court must balance the need for prompt and efficient handling of litigation in the federal courts, in accordance with the Federal Rules, against the attainment of a just resolution of a particular dispute before the court. As discussed *supra,* the court must consider whether the failure to present the evidence before close of the case is excusable, and whether the moving party has a meritorious defense based on that evidence. In addition, the court must consider whether the other party will be substantially prejudiced by a reopening, and, if so, whether the prejudice can be mitigated by an award of costs or other shaping of relief. After consideration of GI's motion to reopen in light of those factors, the Court concludes that the motion should be denied.

■ The Court can find no excuse for GI's failure to present the evidence it now seeks to introduce prior to decision in this case. GI has not contended, and in fact could not contend, that the evidence is "newly discovered". The basis of GI's argument on this motion is that entry of judgment against it would be unjust because of facts found in the *Hughes v. GI* infringement action. The evidence that GI claims is relevant here was introduced in the previous action, and clearly was available for this trial.

GI's "excuse" is that its withdrawal was only with respect to affirmative prosecution of the Watkins patent. The Court cannot accept the distinction which GI has drawn. Even assuming such a distinction would be relevant, the statement by GI's counsel in open court did not draw any distinction between affirmative and defensive use of the Watkins patent; until briefs were filed on the present motion, the Court was unaware that GI had attempted to reserve its rights to use the Watkins patent defensively. In any event, the Court finds that GI, as a named defendant, cannot withdraw from the contest on some of the issues, when it offered no evidence whatsoever on any of the issues. The dates claimed by GI for the Watkins invention were clearly at issue in the trial, whether on an affirmative or defensive basis. The evidence which would have been introduced in support of the Watkins claim of priority would be virtually identical with the evidence which GI now seeks to introduce as a defense against BTL's priority.[12] If such evidence had been introduced, the Court would have made a final determination not only on the priority of the Watkins patent, but also on the effect of the Watkins' dates on the priority of BTL's Kerwin patent.

11. *See, e. g., Globe Liquor Co. v. San Roman,* 332 U.S. 571, 68 S.Ct. 246, 92 L.Ed. 177 (1948); *Nuttall v. Reading Co.,* 235 F.2d 546, 548 (3rd Cir. 1956); *Chromalloy American Corp. v. Alloy Surfaces Co.,* 55 F.R.D. 406 (D.Del.1972) (Rule 59); *Wagner v. Pennsylvania R. Co.,* 282 F.2d 392 (3rd Cir. 1960); *Torockio v. Chamberlain Mfg. Co.,* 56 F.R.D. 82 (W.D.Pa.1972), *aff'd,* 474 F.2d 1340 (3rd Cir. 1973) (Rule 60(b)); *Gomes v. Williams,* 420 F.2d 1364 (10th Cir. 1970); *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242 (3rd Cir. 1951) (Rule 55(c)).

12. GI proposes to introduce three documents, all of which were exhibits in the *Hughes v. GI* litigation: the Watkins patent application filed November 17, 1966; certain pages of a funding proposal submitted by GI's predecessor, General Micro-Electronics, Inc. (GMe), to the U.S. Air Force on August 9, 1965; and an inter-office memorandum dated March 30, 1965 from Watkins setting forth the idea of a silicon-gate process. GI has not indicated, either in its brief or at oral argument, that it relies on any other evidence or testimony in support of its motion.

In addition, GI urges that it should be allowed to reopen under Rule 60(b)(1), as the decision by this Court of July 19 was a "subsequent event" which "surprised" defendant. Since GI made the choice not to contest the action on the basis of full knowledge of all the proceedings and the issues involved, it cannot now claim that the Court's decision was a "surprise". It is hardly surprising that a decision will be rendered after a trial on the merits, or that the decision may be adverse to one or more of the parties. Presumably, GI's decision to withdraw was made only after an assessment of the probable outcome of the case and the cost of litigation. The Court cannot now grant extraordinary relief merely because that assessment was wrong. As the cases cited *supra* clearly demonstrate, a party cannot request relief from the court for its own errors in judgment, when the strategy of litigation was based on conscious and informed choices. The language of the U.S. Supreme Court in *Ackermann v. U. S.,* 340 U.S. 193, 198, 71 S.Ct. 209, 211, 95 L.Ed. 207 (1950) is particularly relevant:

> Petitioner made a considered choice not to appeal, apparently because he did not feel that an appeal would prove to be worth what he thought was a required sacrifice of his home. *His choice was a risk, but calculated and deliberate and such as follows a free choice.* Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong, considering the outcome of the *Keilbar* case. There must be an end to litigation someday, and free, calculated, deliberate choices are not to be *relieved* from. (emphasis added).

Even if GI could satisfy the Court that its default was excusable, it must also establish that the defense it seeks to present is meritorious. GI has urged, in its brief and at oral argument, that the introduction of three pieces of evidence, all of which were presented in the previous action, will clearly establish that BTL is not entitled to priority. The Court is unwilling to incorporate wholesale its findings in another action involving only one of the parties affected by this motion. The decision of July 19, 1976 establishes GI's dates only as against Hughes, and its findings must be considered in that context. This Court did not find, in the *Hughes v. GI* action, that the affidavit and plan proposal unequivocally established a date of conception for Watkins of sometime prior to March 30, 1965. It found rather that, *for purposes of that action,* those dates would be accepted, as they did not affect the ultimate holding.[13] The Court left unresolved the extent of Watkins' role in the early work on conception. Nor did the Court determine that the Air Force funding proposal was evidence of a date of conception. The proposal was introduced as evidence of GI's date of reduction to practice, and was not considered by the Court in the context of a date of conception. The evidence which GI proposes to introduce in support of its conception date is, at best, ambiguous. In the *Hughes v. GI* action, it was found sufficient to support the March, 1965 date, but only when considered in light of the facts of that case and the ultimate holding of this Court.

The evidence which GI offers in support of its reduction to practice likewise does not clearly establish the November 17 date. BTL contends in its briefs and attached exhibits that GI failed to correct, in its November 17 filing, the problem of short-circuiting which invalidated the earlier September 26 application.[14] The later applica-

---

13. "The evidence points conclusively to the fact that the research and development group at GMe had in their minds the idea of using a silicon-gate process to make a self-aligning field-effect transistor, but there is no statement by any of the witnesses that Boyd Watkins was the one to conceive it. Neither Watkins himself nor Farina could say positively that Watkins was the one . . . . Despite this, however, the Court concludes that the idea was conceived by one or more members of the GMe Staff sometime prior to March 30, 1965, at which time Watkins wrote a memo to Farina in which he discussed the feasibility of evaluating the 'polycrystalline silicon-gate process.' " 374 F.Supp. at 1171.

14. In *Hughes v. GI,* this Court held that the earlier patent application did not establish a reduction to practice because it taught an inop-

tion was never challenged in this action as a reduction to practice, however, since Hughes relied on its own filing date of October 26, 1966. The November 17 date was challenged by BTL in the interference proceedings before the Patent Office. Although GI's abandonment of contest precluded the Patent Office from deciding the question, deposition testimony of a BTL scientist indicates that the second application failed to correct the short-circuiting problem of the first.[15] The Court can make no findings of fact here based on that testimony, but the testimony does cast substantial doubt on GI's contention that the November 17 filing clearly establishes a prior reduction to practice.

If the evidence clearly demonstrated that the correct result in this case were no award of priority to any party, this Court would have a harder case to decide. It may be that the interest in enforcing a just result may, in an extraordinary situation, justify relieving the moving party of the consequences of his own decision. That case is not presented here. The record does not establish that the result would have been different if GI had participated fully in the proceedings. At the most, the evidence GI seeks to introduce casts some slight doubt on the Court's decision—doubt that could have and should have been resolved at trial. When the Court considers that GI has neither established an excuse for its failure to defend, nor shown the Court that its decision is factually or legally incorrect, it must deny the motion to reopen.[16]

The question of possible prejudice to BTL from a reopening has not been fully addressed by either side. Certainly a reopening would entail time and expense on the part of BTL and its attorneys. If the case were reopened, the Court would have to permit BTL to introduce its own evidence and expert testimony in opposition to the dates claimed by GI. In addition, BTL would also be afforded an opportunity to relitigate its own dates as against GI, since that opportunity was not available to BTL at trial.[17] Additional discovery might well be needed to allow both sides to prepare for the hearing of GI's defense. If the Court found that the motion was justified, the additional cost incurred by BTL could be borne by GI, or apportioned between the parties. Since the Court has found that GI's motion is without merit, however, it need not consider the possibilities of a conditional reopening.

erative device which could not be made operative by changes obvious to one of ordinary skill in the art. The defect in the specification was found to be a short circuit caused by an apparent connection between the source and drain regions of the device. 374 F.Supp. at 1175–1177.

15. *See* Deposition of Richard Jacobs, dated August 27, 1974, pp. 6–16, 36–40, 94, attached to BTL's Memorandum in Opposition to GI's Motion under Rule 59 and Reply in Support of BTL's Motion for Entry of Judgment.

16. Except for the fact that the present case involves a default by one party, the Court finds remarkably similar the case of *Rue v. Feuz Construction Co.,* 103 F.Supp. 499 (D.D.C. 1952). In that case, defendants made a motion under Rule 60(b) to reopen the case after the judge had proposed findings of fact and conclusions of law, but prior to judgment. The defendants argued, inter alia, that: the tentative decision of the court was a surprise; the evidence was insufficient to support the decision; the Court needed more facts to render justice; and it was within the Court's discretion and power to reopen the case upon a substantial showing that an unjust and incorrect judgment was about to be entered. The Court refused to reopen the case on the grounds that: the issues had been raised at trial, and a full opportunity given to the defendant to present evidence; nothing in the record or motion indicated that the parties whose testimony the defendant sought were incapable of appearing at the time of trial; there was no contention that the evidence was newly discovered; and there was no substantial showing that, had the evidence been introduced, a different judgment would have been entered.

17. BTL urges in particular that it be permitted to reargue the question of whether certain probe tests performed in May–June, 1966 can be considered a reduction to practice in the light of subsequent decisions in other jurisdictions.

FORM OF JUDGMENT.

Since GI's motion to reopen has been denied by this Court, BTL's motion for entry of judgment is hereby granted. The Court cannot, however, enter judgment on the merits against GI, as proposed by BTL, since it can make no findings of fact on the present record in this action with respect to GI's dates of conception and reduction. As GI has failed to present a defense to this action, the most appropriate form of judgment is one by default under Rule 55(b)(2). Judgment will be entered accordingly.

Submit order.