**Janet C. DAWSON, in her own right and as personal representative for the estate of Peter W. Dawson, deceased, Plaintiff,**

v.

**COMPAGNIE DES BAUXITES DE GUINEE, a Delaware corporation, Defendant.**

**Janet C. DAWSON, Plaintiff,**

v.

**HALCO (MINING) INC., Defendant.**

**Civ. A. Nos. 82–407–JLL, 82–426–JLL.**

United States District Court,
D. Delaware.

Aug. 14, 1986.

Walter L. Pepperman, II of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiff.

Wayne N. Elliott of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for defendants.

LATCHUM, Senior District Judge.

In a previously reported opinion, *Dawson v. Compagnie des Bauxites de Guinee*, 593 F.Supp. 20 (D.Del.), *aff'd*, 746 F.2d 1466 (3d Cir.1984), this Court dismissed two actions brought by Janet C. Dawson ("Dawson") against two Delaware corporations on the grounds of *forum non conveniens*. The actions were predicated upon wrongful death and personal injuries resulting from an automobile accident which occurred on July 12, 1980 in the Republic of Guinea in West Africa. The underlying facts and the reasons for the Court's dismissal were all set forth in detail in the previous opinion. In its ruling, this Court expressly found that the Republic of Guinea provided an adequate alternative forum for this litigation. *Id.* at 23–25.

Presently before the Court is Dawson's motion filed nearly two years after the Third Circuit affirmance in this case, pursuant to Fed.R.Civ.P. 60(b)(6), to open the final judgment entered on September 21, 1984. (Docket Item ["D.I."] 77 in C.A. No. 82–407.) In essence, Dawson requests permission to proceed anew with her claims against the defendants in this Court. The gravamen of Dawson's motion is that she has reasonably attempted to proceed against the defendants in the Republic of Guinea, but has been unsuccessful. (D.I. 67 in C.A. No. 82–426.)[1] For the reasons that follow, Dawson's motion will be denied.

**FACTS PERTINENT TO THIS MOTION**

The record demonstrates that Dawson has made essentially three distinct attempts at what she considers pursuing her claim in Guinea. First, Dawson's counsel in the United States, Walter L. Pepperman II, ("Pepperman"), wrote a short two-paragraph letter to Tolo Beavogui, the Ambassador to the United States from the Republic of Guinea, requesting information "concerning the commencement of legal proceedings" in Guinea. (D.I. 68, Ex. A.) The letter was mailed on December 13, 1984 to the Guinean Ambassador in Washington, D.C. (*Id.*, Ex. B.) Pepperman did not receive any response from the Guinean Ambassador. (D.I. 68.)

The second and third attempts in pursuing this case in Guinea were performed by Dawson's counsel in the United Kingdom, Norman Leslie Jones ("Jones"). On February 1, 1985, Jones wrote a two-page letter to the Guinean Embassy in Paris requesting the Ambassador to answer questions regarding the commencement of legal proceedings in Guinea. (D.I. 69, Ex. A.) Apparently to insure delivery of the letter to the Guinean Embassy in Paris, Jones also sent a copy of the letter, which included a French translation, to the British Embassy on February 18, 1985. (*Id.*) On March 6, 1985, the British Embassy responded in writing to Jones' law firm that they had delivered Jones' letter to the Guinean Embassy in Paris. (*Id.*) The Guinean Embas-

1. All further D.I. references will be to C.A. No. 82–426 unless otherwise indicated.

sy did not respond to Jones' letter. (D.I. 69.)

Apparently recognizing the fruitless nature of Pepperman's and his general letters of inquiry, Jones successfully scheduled a meeting with the Guinean Consul in Paris. On March 26, 1985, Jones, along with translator Alain Feder, met with Ambassador Caniara in Paris. (*Id.*)[2] The Guinean Consul was unfamiliar with court procedures in Guinea, but suggested that Jones write to Mersieaur Le Procurear in Conakry, Guinea, to request the appointment of a public lawyer to handle Dawson's claim. (*Id.*).

On July 25, 1985, four months after his meeting with the Guinean Consul, Jones sent a detailed letter and documents to Mersieaur Le Procurear along with a French translation. (*Id.*, Ex. C.) Jones' letter went unanswered. (*Id.*) Furthermore, Jones represents that Dawson has incurred costs of approximately 9,000 British pounds in attempting to pursue her claim in Guinea. (*Id.*)

In discovery regarding the *forum non conveniens* issue previously decided by this Court, Pepperman elicited deposition testimony regarding the prosecution of legal claims in Guinea. Koly Mamady Kourouma ("Kourouma"), a member of the Guinean bar and former judge in the Guinean court system, testified that the most practical means of securing a Guinean attorney was to physically travel to Guinea, contact a lawyer, and have the procurear's office ratify the relationship. (D.I. 33 at 11, 13, and 109; *see also* D.I. 65 in C.A. No. 82–407 at A–10.)

**LEGAL PRINCIPLES AND CASE LAW**

Rule 60(b)(6) provides:

**Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: ... (6) any other

reason justifying relief from the operation of the judgment.

Dawson's briefs fail to mention, let alone discuss, the applicable legal standards for evaluating a Rule 60(b)(6) motion. Nonetheless, the Court has discerned the legal principles governing this motion.

In *Klapprott v. United States*, 335 U.S. 601, 614–15, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949), the United States Supreme Court, speaking through Justice Black, held that Rule 60(b)(6) permitted a district court to grant relief by vacating a judgment "whenever such action is appropriate to accomplish justice." One year later, the Supreme Court considerably narrowed its arguably expansive language in *Klapprott*. In *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950), the Court held that a district court should grant relief under Rule 60(b)(6) only in extraordinary circumstances. In so holding, the *Ackermann* majority reasoned that the facts before the *Klapprott* Court presented the extraordinary circumstances necessary to justify relief under Rule 60(b)(6). *Ackermann*, 340 U.S. at 198–200, 71 S.Ct. at 211–12. Because Justice Black believed that *Ackermann* significantly scaled back the Court's previous imprimatur on an expansive judicial gloss of Rule 60(b), he dissented in *Ackermann*. *See id.* at 202–05, 71 S.Ct. at 213–15. Nevertheless, in accordance with *Ackermann*, courts have given a limited remedial effect to Rule 60(b)(6)'s language.

The case law in this circuit underscores the high standard that a party must meet to prevail on a Rule 60(b)(6) motion. In *Skevofilax v. Quigley*, No. 85–5300, slip op. at 12 (3d Cir. May 7, 1986), the Third Circuit opined that "relief is unavailable under [Rule 60(b)(6)] absent a showing that extraordinary circumstances justify the reopening of the judgment." Furthermore, "[t]his Circuit has consistently held that in order to grant a motion under Rule 60(b)(6) the movant must allege and prove such extraordinary circumstances as will be suf-

---

**2.** Paragraph 5 of Jones' affidavit, D.I. 69, represents that the meeting was scheduled for March 26, 1986. Apparently this is an inadvertent misstatement and the correct year should be 1985.

ficient to overcome our overriding interest in the finality of judgments." *Mayberry v. Maroney*, 529 F.2d 332, 337 (3d Cir.1976) (Gibbons, J., concurring). Moreover, within the ambit of Rule 60(b), clause (6) is a residual clause "to be invoked only on the basis of some reason other than those specified in the preceding clauses (1)–(5)." 7 J. Moore, Moore's Federal Practice ¶ 60.27[2] at 60–273 (2d ed. 1985).[3]

## ANALYSIS

The present procedural posture of this motion is apparently unique. The Court has been unable to locate any case where a party, after being dismissed on *forum non conveniens* grounds, has sought to use Rule 60(b)(6) to reopen legal proceedings in the original jurisdiction. Additionally, neither party has brought any case even remotely similar to this one to the attention of the Court.

For numerous reasons, Dawson's original filing in this Court was dismissed on *forum non conveniens* grounds. *See Dawson*, 593 F.Supp. at 23–28. Now, Dawson is essentially averring that, contrary to the reasons set forth in the Court's previous published opinion, Guinea does not offer an adequate forum for the pursuit of her claims. Hence, Dawson is attempting to convince this Court to permit recommencement of the litigation here.

■ The Court concedes that plaintiff's efforts to date have proved futile. However, the Court believes that the efforts undertaken by Dawson's attorneys to litigate in Guinea have been sorely deficient and misguided. When viewed in light of the requirements for relief under Rule 60(b)(6), Dawson has made no showing of

extraordinary circumstances justifying the reopening of this Court's judgment.

The crucial factor exemplifying the deficiencies in Dawson's attempt to proceed in Guinea lies in her failure to directly contact a Guinean lawyer. Additionally, due to the uncontradicted testimony in the record regarding the initiation of legal proceedings in Guinea, the Court cannot be accused of Monday morning quarterbacking. Kourouma's sworn testimony vividly demonstrates that the most practical way to initiate a lawsuit in Guinea is to "go, get in touch with a lawyer." (D.I. 33 at 109.) This reply was in response to questions asked by Pepperman and designed to elicit information about the Guinean court system. (*See generally* D.I. 33.)

■ Hence, as early as January 28, 1983, the date Pepperman deposed Kourouma, plaintiff was advised by a member of the Guinean bar as to the necessary course of action to follow in Guinea. The record demonstrates that plaintiff has failed to heed this advice elicited through sworn testimony; rather, she has taken the circuitous route of attempting to contact Guinean ambassadors, who may or may not have knowledge, or the willingness to share it with foreigners, of Guinea's legal system.

The Court recognizes that Dawson has expended a considerable sum of money pursuing her claims in Guinea. Nonetheless, her attorneys were explicitly advised, in sworn testimony by a member of the Guinean bar, that physical travel to Guinea (or at least direct contact with a Guinean attorney) was necessary to secure counsel in that country. Moreover, the record demonstrates that litigants in the Guinean legal system must retain Guinean counsel. (*Id.* at 104.)[4] Dawson's attorneys flouted that

---

**3.** Rule 60(b) motions must be made within a "reasonable time," and motions based on clauses 1, 2, and 3 must be made not more than one year after the judgment or order was entered. *See* Fed.R.Civ.P. 60(b). Because Dawson's motion is predicated upon clause 6, it is not subject to the one-year time constraint and its timeliness is therefore governed by the "reasonable time" provision. Since the Court concludes that Dawson has not made the requisite showing to justify relief under clause 6, it is unnecessary to

address whether, under the facts of this case, a Rule 60(b)(6) motion filed nearly two years after the entry of final judgment is timely.

**4.** Kourouma testified that, "except for cases acknowledged by international law," only Guinean attorneys are permitted to appear in Guinean courts. *Id.* Even if Guinea would permit Dawson's foreign counsel to personally appear in Guinea, direct contact with a Guinean attorney probably would be necessary to effectuate such an arrangement.

advice and chose an alternative and wasteful course of action. The Court is loath to penalize the defendants for plaintiff's counsel's missteps.

Plaintiff's actions seem designed to show this Court the purported error of its decision two years ago. This is evidenced by the general nature of the questions Dawson's attorneys propounded to the Ambassadors. (*See generally* D.I. 68, Ex. A, D.I. 69, Ex. A, B, and C.) Furthermore, on June 12, 1981, before Dawson filed her original complaint in this jurisdiction, Jones wrote to the Guinean Embassy in Paris requesting general information on initiating a lawsuit in Guinea. (D.I. 69, Ex. A.) Jones did not receive a response to this letter. (D.I. 69.) Hence, plaintiff was on notice even before the commencement of the initial action in Delaware that general letters of inquiry to ambassadors may not be the best method for pursuing a legal claim in Guinea. Yet, plaintiff still chose to pursue this course of action after her case was dismissed from this Court on *forum non conveniens* grounds. In essence, plaintiff seems reluctant to actively prosecute her claim in Guinea.

■ Although the expenses incurred by Dawson are regrettable, the expenditure of considerable sums of money to pursue a course of action contrary to sound advice from a member of the Guinean bar, *inter alia*, cannot form the basis for reopening this Court's judgment. "The broad power granted by clause (6) is not for the purpose of relieving a party from free, calculated, and deliberate choices [s]he has made. A party remains under a duty to take legal steps to protect his [or her] own interests." 11 Wright & Miller, Federal Practice & Procedure § 2864 at 214 (1973). In *Bell Tel. Laboratories, Inc. v. Hughes Aircraft Co.*, 73 F.R.D. 16, 21 (D.Del.1976), this Court stated that:

> [Section 60(b)(6) ] cannot be used ... to relieve a party from the duty to take legal steps to protect his [or her] interests. [citation omitted] If a party makes a free and conscious choice regarding the conduct of the litigation, [s]he cannot be granted relief under Rule 60(b)(6) from the consequences of that decision.

Since Dawson chose, through the exercise of her own free will, to pursue the roundabout route of contacting ambassadors, as opposed to directly contacting a Guinean attorney, she must suffer the consequences and attendant expenses. Plaintiff has only made one attempt to contact a legal official in Guinea, and her attempts to gather information from consuls in the United States and France are not germane to pursuing litigation in Guinea.[5]

## CONCLUSION

Plaintiff's papers submitted to the Court are utterly devoid of any discussion of the standards govening a Rule 60(b)(6) motion. As the Court has previously discussed, and as defendants note, though in a cursory fashion, a high standard awaits the proponent of a Rule 60(b)(6) motion. In sum, Dawson has not demonstrated any extraordinary circumstances which justify relief under Rule 60(b)(6). Accordingly, Daw-

---

5. Plaintiff advances various arguments which are irrelevant to the Rule 60(b)(6) calculus in light of the facts of this case. First, Dawson asserts that "it would be unreasonable to require her to endure the additional financial burden ... involved in a trip to Guinea." (D.I. 75 at 2.) As noted earlier, Dawson's financial burden is only "additional" in the sense that additional expenses flow from misguided attempts to contact ambassadors as opposed to attorneys. Second, Dawson relies on the fact that the defendants are incorporated in Delaware as a justification for reopening this case. However, this is a *forum non conveniens* argument which defendant raised and lost nearly two years ago and is simply irrelevant to the present motion. Finally, in his affidavit, Jones attempts to link Great Britain's bar on contingency fees to Dawson's expenditures of approximately 9,000 British pounds. (D.I. 69 at ¶ 11.) The implication is that this Court should not force Dawson to incur any more expenditures because she will have to fund all future costs because of the absence of a contingency arrangement. Nonetheless, because plaintiff has not pursued her case in an efficient or appropriate manner, the expenditure of this money and the unavailability of a contingency fee arrangement must be severely discounted by the Court.

son's motion to reopen the final judgment entered in this case will be denied.

An order will be entered in accordance with this memorandum opinion.