# ACKERMANN *v.* UNITED STATES.

NO. 35.

Argued October 19, 1950.—Decided December 11, 1950.

*E. M. Grimes* argued the cause and filed a brief for petitioners.

*James L. Morrisson* argued the cause for the United States. With him on the brief were *Solicitor General Perlman, Assistant Attorney General McInerney* and *Israel Convisser.*

Mr. Justice Minton delivered the opinion of the Court.

Petitioner Hans Ackermann filed a motion in the District Court for the Western District of Texas to set aside a judgment entered December 7, 1943, in that court cancelling his certificate of naturalization. The motion was filed March 25, 1948, pursuant to amended Rule 60 (b) of the Federal Rules of Civil Procedure which became effective March 19, 1948.* The United States filed a

---

*"Relief From Judgment or Order.

"(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59 (b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defend-

motion to dismiss petitioner's motion. The District Court denied petitioner's motion and the Court of Appeals affirmed. 178 F. 2d 983. We granted certiorari. 339 U. S. 962.

The question is whether the District Court erred in denying the motion for relief under Rule 60 (b).

Petitioner and his wife Frieda were natives of Germany. They were naturalized in 1938. They resided, as now, at Taylor, Texas, where petitioner and Max Keilbar owned and operated a German language newspaper. Frieda Ackermann wrote for the paper. She was a sister of Keilbar, who was also a native of Germany and who had been naturalized in 1933.

In 1942 complaints were filed against all three to cancel their naturalization on grounds of fraud. Petitioner and Keilbar were represented by counsel and answered the complaints. After an order of consolidation, trial of the three cases began November 1, 1943, and separate judgments were entered December 7, 1943, cancelling and setting aside the orders admitting them to citizenship. Keilbar appealed to the Court of Appeals, and by stipulation with the United States Attorney his case in that court was reversed, and the complaint against him was ordered dismissed. The Ackermanns did not appeal.

Petitioner in his motion here under consideration alleges that his "failure to appeal from said judgment is excusable" for the reason that he had no money or property other than his home in Taylor, Texas, owned by him and his wife and worth $2,500, "and the costs of transcribing

ant not actually personally notified as provided in Section 57 of the Judicial Code, U. S. C., Title 28, § 118, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action." Fed. Rules Civ. Proc., 60 (b).

the evidence and printing the record and brief on appeal were estimated at not less than $5,000.00." On December 11, 1943, petitioner was detained in an Alien Detention Station at Seagoville, Texas. Before time for appeal had expired, petitioner was advised by his attorney that he and his wife could not appeal on affidavits of inability to pay costs until they had "appropriated said home to the payment of such costs to the full extent of the proceeds of a sale thereof"; that this information distressed them, and they sought advice from W. F. Kelley, "Assistant Commissioner for Alien Control, Immigration and Naturalization Department," in whose custody petitioner and his wife were being held, "and he being a person in whom they had great confidence"; that Kelley on being informed of their financial condition and the advice of their attorney that it would be necessary for them to dispose of their home in order to appeal, advised them in substance to "hang on to their home," and told them further that they had lost their American citizenship and were stateless, and that they would be released at the end of the war; that relying upon Kelley's advice, they refrained from appealing from said judgments; that on April 29, 1944, after time for appeal had expired, they were interned, and on January 25, 1946, the Attorney General ordered them to depart within thirty days or be deported. They did not depart, and they have not been deported, although the orders of deportation are still outstanding. Petitioner further alleged that he would show that the judgment of December 7, 1943, was unlawful and erroneous by producing the record in the *Keilbar* case.

The District Court on September 28, 1948, denied petitioner's motion to vacate the judgment of denaturalization, the court stating in the order that "there is no merit to said motion."

It will be noted that petitioner alleged in his motion that his failure to appeal was *excusable*. A motion for relief because of excusable neglect as provided in Rule 60 (b) (1) must, by the rule's terms, be made not more than one year after the judgment was entered. The judgment here sought to be relieved from was more than four years old. It is immediately apparent that no relief on account of "excusable neglect" was available to this petitioner on the motion under consideration.

But petitioner seeks to bring himself within Rule 60 (b) (6), which applies if "any other reason justifying relief" is present, as construed and applied in *Klapprott* v. *United States,* 335 U. S. 601. The circumstances alleged in the motion which petitioner asserts bring him within Rule 60 (b) (6) are that the denaturalization judgment was erroneous; that he did not appeal and raise that question because his attorney advised him he would have to sell his home to pay costs, while Kelley, the Alien Control officer, in whom he alleges he had confidence and upon whose advice he relied, told him "to hang on to their home" and that he would be released at the end of the war; and that these circumstances justify failure to appeal the denaturalization judgment.

We cannot agree that petitioner has alleged circumstances showing that his failure to appeal was justifiable. It is not enough for petitioner to allege that he had confidence in Kelley. On the allegations of the motion before us, Kelley was a stranger to petitioner. In that state of the pleadings there are two reasons why petitioner cannot be heard to say his neglect to appeal brings him within the rule. First, anything said by Kelley could not be used to relieve petitioner of his duty to take legal steps to protect his interest in litigation in which the United States was a party adverse to him. *Munro* v. *United States,* 303 U. S. 36; *Burnham Chemical Co.* v. *Krug,* 81 F. Supp. 911, 913, aff'd *per curiam sub nom.*

*Burnham Chemical Co.* v. *Chapman,* 86 U. S. App. D. C. 412, 181 F. 2d 288. Secondly, petitioner had no right to repose confidence in Kelley, a stranger. There is no allegation of any fact or circumstance which shows that Kelley had any undue influence over petitioner or practiced any fraud, deceit, misrepresentation, or duress upon him. There are no allegations of privity or any fiduciary relations existing between them. Indeed, the allegations of the motion all show the contrary. However, petitioner had a confidential adviser in his own counsel. Instead of relying upon that confidential adviser, he freely accepted the advice of a stranger, a source upon which he had no right to rely. Petitioner made a considered choice not to appeal, apparently because he did not feel that an appeal would prove to be worth what he thought was a required sacrifice of his home. His choice was a risk, but calculated and deliberate and such as follows a free choice. Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong, considering the outcome of the *Keilbar* case. There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.

As further evidence of the inadequacy of petitioner's motion to bring himself within any division of Rule 60 (b) which would excuse him from not having taken an appeal, we call attention to the fact that Keilbar got the record before the Court of Appeals, and it contained all the evidence that was introduced as to petitioner and his wife, who were tried together with Keilbar. The Ackermanns and Keilbar were related, yet no effort was made to get into the Court of Appeals and use the same record as to the evidence that Keilbar used. It certainly would not have taken five thousand dollars or one-tenth thereof for petitioner and his wife to have supplemented the Keilbar record with that pertaining to themselves and

to prepare a brief, even if all of it were printed. We are further aware of the practice of the Courts of Appeals permitting litigants who are poor but not paupers to file typewritten records and briefs at a very small cost to them. With the same counsel representing petitioner as represented his kinsman Keilbar, and with Frieda Ackermann having funds sufficient to employ separate counsel, failure to appeal because of the fear of losing his home in defraying the expenses of the brief and record, makes it further evident that Rule 60 (b) has no application to petitioner in this setting.

The *Klapprott* case was a case of extraordinary circumstances. MR. JUSTICE BLACK stated in the following words why the allegations in the *Klapprott* case, there taken as true, brought it within Rule 60 (b) (6):

"But petitioner's allegations set up an extraordinary situation which cannot fairly or logically be classified as mere 'neglect' on his part. The undenied facts set out in the petition reveal far more than a failure to defend the denaturalization charges due to inadvertence, indifference, or careless disregard of consequences. For before, at the time, and after the default judgment was entered, petitioner was held in jail in New York, Michigan, and the District of Columbia by the United States, his adversary in the denaturalization proceedings. Without funds to hire a lawyer, petitioner was defended by appointed counsel in the criminal cases. Thus petitioner's prayer to set aside the default judgment did not rest on mere allegations of 'excusable neglect.' The foregoing allegations and others in the petition tend to support petitioner's argument that he was deprived of any reasonable opportunity to make a defense to the criminal charges instigated by officers of the very United States agency which supplied the secondhand information upon which his citizenship was taken

away from him in his absence. The basis of his petition was not that he had neglected to act in his own defense, but that in jail as he was, weakened from illness, without a lawyer in the denaturalization proceedings or funds to hire one, disturbed and fully occupied in efforts to protect himself against the gravest criminal charges, he was no more able to defend himself in the New Jersey court than he would have been had he never received notice of the charges." *Klapprott* v. *United States,* 335 U. S. 601, 613–614.

By no stretch of imagination can the voluntary, deliberate, free, untrammeled choice of petitioner not to appeal compare with the Klapprott situation. MR. JUSTICE BLACK set forth in order the extraordinary circumstances alleged by Klapprott. We paraphrase them and give the comparable situation of Ackermann.

In the spring of 1942 Klapprott was ill, and the illness left him financially poor and unable to work. On May 12, 1942, proceedings were commenced in a New Jersey District Court to cancel his citizenship. As for Ackermann, when he was sued he was well, and had a home worth $2,500, one-half interest in a newspaper, and the means to employ counsel.

When complaint was served upon Klapprott, he had no money to hire a lawyer, and he wrote an answer to the complaint filed against him and a letter to the American Civil Liberties Union asking it to represent him without fee. Ackermann had the means to hire and did hire able counsel of his own choice who prepared and filed an answer for him.

In less than two months after the complaint was served on the penniless, ill Klapprott, he was arrested for conspiracy to violate the Selective Service Act and taken to New York and jailed in default of bond. His letter to the American Civil Liberties Union was taken by the

Federal Bureau of Investigation before time for him to answer had expired, and was not mailed by that Bureau. Ackermann was never indicted or in jail from the time complaint was filed against him until after judgment, during all of which time he had the benefit of counsel and freedom of movement and action.

Within ten days after his arrest, Klapprott was defaulted in the citizenship proceedings in New Jersey. He was still in jail in New York. No evidence was offered to prove the complaint in the denaturalization proceedings, which complaint was verified on information and belief only. In Ackermann's case, no default was entered. He appeared in person and by counsel and had a trial in open court with able counsel to defend him. Much evidence was introduced and a record was made of it.

Klapprott was convicted in New York and sent to a penitentiary in Michigan. He was later transferred to the District of Columbia, where he was lodged in jail and tried on another charge, later dismissed. The New York conviction was reversed, but he had been in jail for about two years. He was then lodged at Ellis Island for deportation because his citizenship had been cancelled in the New Jersey proceedings where he had been defaulted. While at Ellis Island, the motion to relieve from the default judgment cancelling his citizenship was prepared and filed, denied by the District Court and the Court of Appeals and finally sustained by this Court. Ackermann was never under criminal charges or detained while the suit for cancellation of his citizenship was pending. During all of that time he was free, well, and able to defend himself, and in that regard had able counsel representing him in a trial in open court. Even after the judgment cancelling his citizenship, he had counsel and free access to him, although detained by the United States Government.

From a comparison of the situations shown by the allegations of Klapprott and Ackermann, it is readily apparent that the situations of the parties bore only the slightest resemblance to each other. The comparison strikingly points up the difference between no choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance for negligence and inexcusable negligence. Subsection 6 of Rule 60 (b) has no application to the situation of petitioner. Neither the circumstances of petitioner nor his excuse for not appealing is so extraordinary as to bring him within *Klapprott* or Rule 60 (b) (6).

The motion for relief was properly denied, and the judgment is

*Affirmed.*

No. 36, *Frieda Ackermann* v. *United States,* is a companion case to No. 35, and it was stipulated that the decision in No. 36 should be the same as in No. 35. The judgment in No. 36 therefore is also

*Affirmed.*

MR. JUSTICE CLARK took no part in the consideration or decision of this case.

MR. JUSTICE BLACK, with whom MR. JUSTICE FRANKFURTER and MR. JUSTICE DOUGLAS concur, dissenting.

The Court's interpretation of amended Rule 60 (b) of the Federal Rules of Civil Procedure neutralizes the humane spirit of the Rule and thereby frustrates its purpose. The Rule empowers courts to set aside judgments under five traditional, specified types of circumstances in which it would be inequitable to permit a judgment to stand. But the draftsmen of the Rule did not intend that these specified grounds should prevent the granting of similar relief in other situations where fairness might re-

quire it. Accordingly, there was added a broad sixth ground: "any other reason justifying relief from the operation of the judgment." The Court nevertheless holds that the allegations of the present motions were not sufficient to justify the District Court in hearing evidence to determine whether justice would best be served by granting relief from the judgments against petitioners.* Because I disagree with this interpretation of Rule 60 (b), it becomes necessary to summarize the allegations of the motions.

Petitioners, a husband and wife whose native country was Germany, became naturalized citizens of the United States in 1938. After the declaration of war against Germany, the Government commenced proceedings which resulted in the denaturalization of petitioners and also of their relative, Keilbar. *United States* v. *Ackermann,* 53 F. Supp. 611. Petitioners did not appeal from these judgments but on March 25, 1948, filed duly verified motions for relief from the judgments. The uncontradicted allegations of the motions show: When the judgments were entered, neither of the petitioners had any money or property except a home at Taylor, Texas, worth not in excess of $2,500. They were told by their counsel that the cost of an appeal would be $5,000; that to prosecute an appeal

---

*Petitioners' motions to be relieved from the judgments of denaturalization invoked the jurisdiction of the District Court under Rule 60 (b). Contending that these motions did "not state grounds sufficient to invoke the authority of the Court . . .," the Government moved to dismiss them. These pleadings therefore posed only the question of the trial court's jurisdiction. Without further pleadings or the taking of evidence, the court entered an order which stated that "there is no merit to said [petitioners'] motion[s] and . . . the same should be denied." But since we cannot assume that an issue not framed by the pleadings was decided, it necessarily follows that the District Court held it was without jurisdiction to grant relief under Rule 60 (b). But cf. *Bell* v. *Hood,* 327 U. S. 678, 682–683; *Brown* v. *Western R. Co.,* 338 U. S. 294.

they would have to sell their home, contribute that $2,500 and then hope to have the appeal tried out on an affidavit of insolvency. Being distressed by reason of having to choose between selling their home or foregoing an appeal, the petitioners sought advice from the United States official who then held them in custody, one W. F. Kelley, assistant commissioner for alien control, Immigration and Naturalization Service of the United States. Petitioners had great confidence in this officer. Kelley advised them to "hang on to their home" and also that they "would be released at the end of the war." Because of their reliance on this advice, petitioners "refrained from appealing . . . said judgments." Thereafter their relative Keilbar did appeal and the judgment of denaturalization against him was reversed on the Government's admission that the evidence was insufficient to support it. *Keilbar* v. *United States,* 144 F. 2d 866. Petitioners insisted both in their motions to set the judgments aside and in argument that the evidence against them and Keilbar was substantially the same.

In holding that the allegations of these motions are not even sufficient to justify the District Court in hearing evidence, the Court relies heavily on its assertion that petitioners "had no right to repose confidence in Kelley" because Kelley was a "stranger" to them. In the first place, Rule 60 (b)'s broad grant of power to the District Court should not be constricted by the importation of the concept of legal "rights." Moreover, far from being a stranger, Kelley was the United States official who held petitioners in custody. Any person held by the United States should be able to repose confidence in the Government official entrusted with his custody. There are obvious reasons why this should be true in the case of the foreign born, less familiar with our customs than are our native citizens.

The Court also relies on the fact that the motions to set aside the judgments contain "no allegations of privity or any fiduciary relations existing" between petitioners and Kelley. Surely the liberalizing provisions of 60 (b) should not be emasculated by common-law ideas of "privity" or "fiduciary relations." If relevant, however, I should think that the phrase "fiduciary relations" given its best meaning encompasses the relationship between petitioners and the official who held them in custody.

Finally, since the Court holds that the allegations of petitioners' motions were insufficient to justify the hearing of evidence by the District Court, I think it inappropriate for the Court to consider what purports to be its judicial knowledge of the cost of transcripts and the ability of litigants to file typewritten records and briefs. The motions refute any such knowledge on the part of these petitioners and I am satisfied that no such knowledge would be established if the District Court were permitted to try these cases.

The result of the Court's illiberal construction of 60 (b) is that these foreign-born people, dependent on our laws for their safety and protection, are denied the right to appeal to the very court that held (on the Government's admission) that the judgment against their co-defendant was unsupported by adequate evidence. It does no good to have liberalizing rules like 60 (b) if, after they are written, their arteries are hardened by this Court's resort to ancient common-law concepts. I would reverse.