John T. DUNLOP, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,

v.

PAN AMERICAN WORLD AIRWAYS, INC., Defendant-Appellee,

William E. Fitzgerald, Benedict Martorana and Alex E. Penman, Movants-Appellants.

No. 131, Docket 81–6089.

United States Court of Appeals, Second Circuit.

Argued Oct. 22, 1981.

Decided Feb. 10, 1982.

§ 1.1207, and to specified cable television matters, *id.* § 1.1231.

Jonathan A. Weiss, Legal Services for the Elderly, New York City (Elizabeth Corey, Lucy W. James, Law Clerks, on brief), for movants-appellants.

James S. Frank, New York City (Cecelia T. Roudiez, John L. Lynch, Simpson Thacher & Bartlett, New York City, of counsel), for defendant-appellee.

Joel M. Cohn, Atty. E. E. O. C., Washington, D. C. (Constance L. Dupre, Acting Gen. Counsel, Philip B. Sklover, Acting Associate Gen. Counsel, Vincent Blackwood, Asst. Gen. Counsel, E. E. O. C., Washington, D. C., of counsel), for plaintiff-appellee E. E. O. C.

Before MANSFIELD, VAN GRAAFEILAND and KEARSE, Circuit Judges.

MANSFIELD, Circuit Judge:

In this action by the Secretary of Labor ("Secretary") under § 17 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 217, and § 7(b) of the Age Discrimination Act of 1967 ("ADEA"), 29 U.S.C. § 626(b), against Pan American World Airways, Inc. ("Pan Am"), three former Pan Am employees appeal from an order of Judge Dudley B. Bonsal of the Southern District of New York denying their motion to amend a stipulation of dismissal entered into by Pan Am and the Secretary terminating the action. Appellants moved *pro se* pursuant to Rule 60(b)(6), F.R.Civ.P., to amend the stipulation by making clear that it did not as a matter of federal law or agreement bar their pursuit of their individual state claims against Pan Am for age discrimination in violation of the New York Human Rights Law, N.Y. Exec. Law § 290 *et seq.* Appellants' motion was prompted by the N.Y. State Division of Human Rights' dismissal of their earlier-filed state claims, which had been stayed pending resolution of the federal suit, as having been mooted by the federal settlement. The district court, adopting the opinion of U.S. Magistrate Kent Sinclair, Jr., denied the motion on the grounds that appellants lacked standing to invoke Rule 60 and that it was meritless. We reverse.

In August and October of 1974, appellants and three other former Pan Am employees (who are not involved in this appeal) filed separate complaints with the New York State Division of Human Rights ("N.Y. State Division") alleging individual instances of age discrimination in their employment terminations. After investigations into the merits of these claims, the N.Y. State Division determined on December 20, 1974, that there was probable cause to believe that Pan Am had engaged in the unlawful practice of age discrimination and subsequently consolidated the claims for hearing. Before the public hearing scheduled for June 9, 1975, was convened, the Secretary on May 30, 1975, initiated the present federal action pursuant to the FLSA and the ADEA, alleging a pattern of age discrimination in Pan Am's discharge from 1970 to 1975 of 600 employees between the ages of 40 and 65 in violation of § 4 of the ADEA and § 15 of the FLSA.[1] Pan Am immediately filed a motion with the N.Y. State Division to dismiss appellants' state claims, contending that dismissal was required by § 14(a) of the ADEA, which provides that the commencement of a federal suit under the ADEA "shall supersede any State action." 29 U.S.C. § 633(a). The Secretary, at the N.Y. State Division's request, filed a statement expressing the Labor Department's view that the ADEA does not pre-empt state law, but only requires that pending state claims be stayed temporarily. The N.Y. State Division on August 25, 1975, denied Pan Am's motion to dismiss, holding that although the state claims were "coterminous" with the federal action, § 14(a) only required that the state claims be stayed.

For the next three years appellants were unable either to pursue their state claims or to participate in the federal suit. Their state claims were held in abeyance while Pan Am and the Secretary engaged in extensive and disputed discovery. They were never informed of the progress of the federal suit, and their only involvement was their return of a questionaire circulated by the Secretary to a large number of employees and former employees of Pan Am. In August 1978 Pan Am and the Secretary entered into a "Stipulation of Dismissal" with prejudice in the federal action, in which Pan Am agreed to pay $900,000 "in full settlement and discharge of all claims which have been alleged by the Secretary." Specifically, Pan Am and the Secretary agreed that:

"[This dismissal and settlement] shall be deemed to constitute a bar, merger, and estoppel to the institution or prosecution of any further litigation by the Secretary

---

1. The ADEA utilizes the enforcement mechanism of the FLSA which is incorporated by reference, 29 U.S.C. § 626(b). See *Lorillard v.* *Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1977).

or by any of the individuals described in the first sentence of paragraph III above, to the same extent as if this dismissal had been entered on the merits by the Court."

The Secretary subsequently distributed the $900,000 only to individuals born before 1914, which excluded appellants. The decision to restrict benefits to the pre-1914 class was apparently part of the settlement understanding,[2] based on statistical evidence that only those born before 1914 had been discharged in disproportionate numbers. Although the Secretary could have amended the complaint to apply only to the pre-1914 class and could have explicitly excluded appellants from the federal action, the stipulation entered into by him covered all Pan Am employees alleged to have been discharged discriminatorily during 1970–75, including those excluded from any share of the settlement fund.

The Secretary never made any efforts to contact appellants about the settlement or the distribution decision. Appellants only learned about the settlement three months later in November 1978 in response to their inquiry about the progress of the federal suit. In February 1979 appellants by ex parte letter successfully dissolved the stay of their state proceedings in light of the recently-discovered federal settlement. Pan Am by letter sought reconsideration of the dissolution and renewed its original motion to dismiss the state complaints. In its memorandum to the N.Y. State Division Pan Am repeated its earlier contention that the ADEA, as a matter of federal law, requires dismissal of appellants' state claims. In addition, Pan Am advanced the separate argument that by its terms the Stipulation of Dismissal "explicitly and unequivocally extinguished the rights of [appellants] to continue these proceedings." On May 14, 1980, the N.Y. State Division

dismissed appellants' state complaints, concluding that pursuit of their claims would involve "what is essentially relitigation," that the state complaints "have been mooted and that further proceedings . . . are not required by the Human Rights Law." The Division directed appellants to seek relief in the federal courts from the Secretary's settlement.

This outcome came as a surprise to appellants, who throughout this period had received and relied on numerous assurances from the Secretary that they would be free to pursue their state claims upon resolution of the federal action. Appellants appealed the N.Y. State Division's decision to the State Human Rights Appeal Board pursuant to N.Y. Exec. Law § 297–a[3] and also moved *pro se* in federal district court in August of 1980 to amend the federal settlement pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure. While inexpertly worded,[4] the motion sought a clarifying amendment providing that the federal settlement did not as a matter of federal law or agreement affect the status of appellants' state claims. Appellants urged that such an amendment would facilitate the proper resolution of their state appeal from the N.Y. State Division's dismissal. The Secretary, at the request of the federal district court, filed an amicus brief in which he indicated that he had "no objection to a modification of the Stipulation herein provided that it imposes on [Pan Am] no greater liability or financial expense under the . . . ADEA." The Secretary's brief presented the following "Proposal" to the district court:

"The Secretary respectfully proposes that this Court order an amendment to the record to clarify that the Stipulation of Dismissal with Prejudice under the

---

**2.** There is some confusion on this point, which the Magistrate left unresolved. On several occasions the Secretary indicated to various individuals that Pan Am and the Secretary jointly agreed that only members of the pre-1914 class were to receive benefits and that this was the basis for the $900,000 figure. Pan Am maintains, however, that the Secretary made the distribution decision unilaterally.

**3.** At the time of oral argument the State Human Rights Appeal Board proceeding had apparently already taken place, although a decision had not yet been rendered.

**4.** See note 6, *infra.*

ADEA does not as a matter of federal law or agreement bar or estop the movants from proceeding under the New York State Executive Law."

Pan Am responded that appellants' motion was properly under 60(b)(1) rather than 60(b)(6),[5] that it was therefore time-barred by the former's one-year limitation, and that in any event appellants had failed to show the existence of extraordinary and compelling reasons justifying a 60(b)(6) motion. Pan Am also reasserted that the federal settlement by its terms did bar appellants' state claims and that this was Pan Am's understanding when it agreed to the settlement. The Secretary, however, stated that during the extended negotiations with Pan Am the status of pending state claims, including those of appellants, had been explicitly discussed, that the Secretary had insisted that the federal settlement had no effect on the state claim, and that this was the agreed-upon basis of the settlement.

The district court, adopting the opinion of Magistrate Sinclair, acknowledged that these developments "must surely have been shocking" to appellants. Nevertheless, the district court denied their motion to amend on the ground that appellants lacked standing to invoke Rule 60, since they were not parties to the federal action, were not the legal representatives of the Secretary, and were not in privity with the Secretary. Moreover, the court noted that even if appellants had standing their motion should be dismissed on the merits.

## DISCUSSION

■ The first issue is whether the relief requested by appellants raises a claim properly before the federal courts. While the *pro se* motion is inexpertly drafted and confusing, we construe it as a request to amend the Stipulation of Dismissal to provide that neither as a matter of federal law nor agreement does it bar appellants' state claims.[6] So construed, the essence of appellants' claim is that the language of the federal settlement could be interpreted as barring appellants' state claims, a result that exceeds the statutory authority of the Secretary under the ADEA.[7] Thus the mo-

---

5. Rules 60(b)(1) and (b)(6), F.R.Civ.P. provide: "(b) *Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken."

6. The inexpertly drafted *pro se* motion and the accompanying memorandum suggested several other forms of relief that a federal court is not empowered to grant. For instance, appellants requested a "strong recommendation by the Federal Court to the State Courts that the original finding of probable cause be binding on Pan Am and the Division of Human Rights." The district court correctly held that it could not "instruct or direct" the state courts or agencies as to the operation of state law.
The motion also requested the court to exclude appellants from the preclusive effect of the federal settlement on their individual ADEA claims. However, as the district court pointed out, it appears that the mere filing of the Secretary's complaint necessarily extinguishes the rights of employees to bring individual litigation under the ADEA. 29 U.S.C. § 216(b). The district court therefore lacked the power to revive previously extinguished individual *federal* claims.
Appellants also argued in their brief to the court below that the federal settlement was procedurally defective and therefore invalid since it failed to conform to the requirements of Rule 23 of the F.R.Civ.P. governing class settlements. However, a suit by the Secretary under § 17 of the FLSA is not a representative action to which the strictures of Rule 23 apply. *Donovan v. University of Texas*, 643 F.2d 1201, 1206 (5th Cir. 1981). This argument must therefore be rejected.

7. As the district court correctly found, under the ADEA "the Secretary has absolutely no power to extinguish ... state claims [or] state statutory rights." The relevant section of the ADEA, § 14(a), 29 U.S.C. § 633(a), provides only that the commencement of a federal action shall "supersede" state claims. The legislative history is clear that this language only empowers the Secretary to stay state proceedings, not to dismiss them, H.R. No. 805, 90th Cong., 1st Sess., *reprinted in* [1967] U.S.Code Cong. & Ad. News 2213, 2219, 2224, and the courts have so interpreted that section. *Pandis v. Sikorsky Aircraft Division*, 431 F.Supp. 793,

tion merely seeks to bring the preclusive effect of the federal settlement within the bounds of federal law, a matter that is cognizable by the federal courts. As we recently held in *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9 (2d Cir. 1981), a federal court is obligated to clarify a federal settlement order whose language might be held improperly to bar unlitigated state claims. As in *Super Spuds*, we find that the instant Stipulation of Dismissal was sufficiently ambiguous to be construed as barring appellants' state claims. The relevant sections of the Stipulation provide that:

"[The $900,000] is paid in full settlement and discharge of all claims which have been alleged by the Secretary in the instant action on behalf of any of the individuals described in the first sentence of this paragraph. This dismissal and settlement shall not be deemed to revive or reinstate any rights of action of any individuals that were extinguished, pursuant to 29 U.S.C. § 626(c), upon the commencement of the instant action.

\* \* \* \* \* \*

"[This] dismissal and this settlement shall be deemed to constitute a bar, merger, and estoppel to the institution or prosecution of *any* further litigation, by the Secretary or by any of the individuals described in the first sentence of Paragraph III above, to the same extent as if this dismissal had been entered on the merits by the Court." (Emphasis added).

The district court found that it was "quite obvious" that these sections only precluded further federal litigation under the ADEA. We find, on the contrary, that the language is sufficiently ambiguous and susceptible of misinterpretation to require clarification. This conclusion is supported by several considerations.

The words "bar, merger, and estoppel," coupled with the words "any further litigation," are so broad that they may convey the impression that the federal agreement precludes all litigation, including appellants' state claims. Indeed, Pan Am has repeatedly urged, both to the N.Y. State Division and the court below, that the Stipulation *by its terms* bars appellants' state claims. In light of Pan Am's claim that it intended and understood the Stipulation to have this effect, it might reasonably be inferred that Pan Am's counsel "knew precisely what they wanted to achieve and drafted appropriate language to that end." *Super Spuds, supra*, 660 F.2d at 16. Furthermore, the Secretary appears to acknowledge that the Stipulation's wording is somewhat ambiguous, since it proposed to the court below that it should "*clarify* that the Stipulation . . . does not as a matter of federal law or agreement" bar appellants' state claims and on appeal remains unopposed to such an amendment. (Emphasis added). Finally, it is arguable that the N.Y. State Division's dismissal of appellants' state claims as having been "mooted" by the federal settlement is further evidence that the broad preclusion language of the Stipulation may be misleading or ambiguous.

Although we could leave to New York courts the task of determining the preclusive effect of the federal settlement on state claims, this course was rejected by us in *Super Spuds*, where we stated:

· "A federal court should determine for itself whether it has that power [to preclude state claims] and may properly exercise it—not pass over the question because a state court may assume the unenviable task of deciding that its act was a nullity." 660 F.2d at 16.

Indeed, the case for corrective action by the federal courts is even more compelling here than it was in *Super Spuds*. There the person objecting to the class settlement on the ground that it precluded his state claims could have opted out of the federal class action; appellants here had no say whatsoever about their inclusion in the Secretary's suit. Moreover, in *Super Spuds* the concern

796 (D.Conn.1977); *Simpson v. Alaska State Comm'n for Human Rights*, 423 F.Supp. 552, 556 (D.Alaska 1976), *aff'd*, 608 F.2d 1171 (9th Cir. 1979); *National Cash Register v. Riner*, 413 A.2d 890, 892 (Del.Super.1979).

that state courts might bar the objector's state claims improperly was only speculative. Here the state dismissals have already occurred. Finally, while *Super Spuds* noted the existence of some uncertainty about whether federal courts were empowered to enter settlements barring claims not at issue in a class action, here it is clear, as the district court noted, that "the Secretary has absolutely no power to extinguish ... state claims [or] state statutory rights." We conclude, therefore, that the Stipulation of Dismissal is sufficiently ambiguous to give rise to a claim that the federal settlement is defective, which is clearly cognizable by the federal courts.

■ The second issue is whether appellants' motion to amend, which rests on their claim that they were precluded by law from participating in the federal suit that produced the arguably defective Stipulation of Dismissal, satisfies the procedural requirements of Rule 60(b)(6) of the Federal Rules of Civil Procedure. The claim clearly does not fall within the specific terms of subsections (b)(1)–(5). However, Rule 60(b)(6), which authorizes the court to act upon a showing of "any other reason justifying relief from the operation of the judgment," represents a "grand reservoir of equitable power [that should be] liberally applied." *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977) (quoting 7 Moore's Federal Practice ¶ 60.27[2], at 352, 375). As the Supreme Court stated in *Klapprott v. United States*, 335 U.S. 601, 615, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949), it "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." Accordingly, the one-year limitation of subsections (b)(1), (2), and (3) does not apply, and appellants' motion is time-barred only if it was not made "within a reasonable time." Although appellants' motion to amend, dated August 1980 was made two years after the August 1978 settlement, the motion to amend was filed within four months of the N.Y. State Division's dismissal of appellants' state claims. Until the dismissal, appellants had understandably relied on repeated assurances by the Secretary that the

federal settlement would not bar their state claims. Therefore, we hold that appellants' motion was filed within a reasonable time for the purposes of Rule 60(b)(6).

There remain the questions of whether appellants had standing to invoke Rule 60(b)(6), whether the FLSA and ADEA bar such motions by individual employees, and whether appellants have shown "extraordinary circumstances" warranting post-judgment relief, *Ackerman v. United States*, 340 U.S. 193, 199, 71 S.Ct. 209, 212, 95 L.Ed. 207 (1950).

The district court held that Rule 60 could be invoked only by parties, their legal representatives or those in privity with a party. Relying heavily on § 16(b) of the FLSA, 29 U.S.C. § 216(b), which provides that commencement of the Secretary's suit terminates the rights of individual employees to sue under the ADEA and FLSA, it concluded that appellants were neither parties to the Secretary's suit nor in privity with the Secretary. Permitting employees standing to intervene or to modify a judgment, reasoned the district court, would completely eviscerate this statutory scheme. In our view this analysis erroneously combines two distinct inquiries: whether the standing requirements of Rule 60 are met, and whether the FLSA and ADEA nevertheless prohibit motions by employees to amend.

■ With regard to the first inquiry, we find that the principles governing standing to invoke Rule 60 are sufficiently flexible to permit a finding of standing here. The Advisory Committee Notes indicate that the 1946 amendments to Rule 60 were designed to "permit, either by motion or by independent action, the granting of various kinds of relief from judgments which were permitted in the federal courts prior to the adoption of these rules." Although the old common law and equitable ancillary remedies were abolished,

"[t]o the extent that precedent dealing with these old remedies would warrant relief in a situation not covered by clauses (1)–(5), then that precedent is per-

suasive for the *grant* of relief under residual clause (6)." 7 Moore's Federal Practice ¶ 60.27[1], at 341. (Emphasis in original).

This is so "since the Rule was not designed to restrict relief." *Id.* at ¶ 60.34, at 516.4. See also *Laguna Royalty Co. v. Marsh*, 350 F.2d 817, 823 (5th Cir. 1965) (Rule 60(b)(6) preserves "those grounds long recognized as a basis for relief"). One such longstanding equitable remedy is the bill in the nature of a bill of review. See *Whiting v. Bank of the United States*, 38 U.S. (13 Pet.) 5, 10 L.Ed. 33 (1839); 7 Moore's Federal Practice ¶ 60.15[1], at 55 & n.7; ¶ 60.15[6], at 68–69 & n.3; ¶ 60.19, at 241 n.33. Although Rule 60(b)(6) would not ordinarily be available to non-parties to modify final judgments, we hold that on the facts of this case appellants were sufficiently connected and identified with the Secretary's suit to entitle them to standing to invoke Rule 60(b)(6).[8]

▋ In any event the Secretary's amicus brief to the court below may properly be construed as a motion to amend by the Secretary, who clearly has standing to make such a motion.[9] In his amicus brief, the Secretary presented what he labelled a "Proposal" to the district court, stating:

"The Secretary respectfully proposes that this Court order an amendment to the record to clarify that the Stipulation of Dismissal with Prejudice under the ADEA does not as a matter of federal law or agreement bar or estop the movants from proceeding under the New York State Executive Law."

Courts applying Rule 60 have construed its requirement for a "motion" liberally, treating as motions thereunder requests which were far less precise than the Secretary's "Proposal." See, e.g., *United States v. Backofen*, 176 F.2d 263 (3d Cir. 1949) (letter to court construed as Rule 60 motion); *In re Estate of Cremidas*, 14 F.R.D. 15 (D. Alaska 1953) (mislabelled motion); *United States v. Wissahickon Tool Works, Inc.*, 200 F.2d 936 (2d Cir. 1952) (untimely Rule 59 motion); *Sebastiano v. United States*, 103 F.Supp. 278 (N.D.Ohio 1951) (independent action), aff'd, 195 F.2d 184 (6th Cir. 1952). See generally, 7 Moore's Federal Practice ¶¶ 60.18[8], 60.27[1], 60.28[3]. Accordingly, we hold that the "Proposal" filed by the Secretary, who had standing, amounted to a motion to amend.

Our holding that appellants have standing still requires us to decide whether the

---

8. The dissent quotes from the Secretary's brief on appeal stating his opposition to permitting appellants to "reopen or intervene in this action, or to file a new federal ADEA action based on the same events." However, appellants do not seek, nor does our holding permit them to reopen or intervene or initiate a new federal lawsuit. Our holding, which as we explain below is extremely narrow, is fully supported by the Secretary's positions as expressed in the two sentences immediately preceding the excerpt quoted by the dissent:

"The Commission agrees with the movants that they improperly have been denied any forum in which to present their age discrimination claims. Further, consistent with the government's prior position in this case, the Commission has no objection to a modification of the stipulation of dismissal making clear that the government's federal ADEA suit had no effect whatsoever on the movants' right to pursue their claims under New York State law provided such modification imposes no greater liability or financial expense on Pan Am under the ADEA." (EEOC's Brief at 8).

Contrary to the dissent's view that the Secretary is attempting to 'have it both ways,' *infra* at dissenting opinion pp. 1054–1055, the Secretary's position represents a coherent response

to the admittedly confusing *pro se* motion to amend. As we noted earlier, *supra* at fn. 6, appellants' motion to amend raised several claims, a number of which appeared to challenge the validity of the entire Stipulation and requested that the settlement be invalidated and the federal suit reopened. As to these sweeping claims, the Secretary has consistently maintained his opposition. However, the motion as construed here also contained an extremely limited request to amend the Stipulation to bring it clearly into compliance with federal law. As to this narrow claim, the Secretary has equally consistently maintained his support. These positions are clearly reconcilable since, as we explain *infra* at pp. 1052–1054, the policies against repetitive federal suits and intervention by federal employees in an ongoing suit by the Secretary are inapplicable to the limited motion to amend involved here.

9. In light of our disposition, we need not and do not reach appellants' contention that their motion to amend should be treated as a Rule 24 motion to intervene for which they have standing.

FLSA and ADEA prohibit employees such as appellants from seeking post-judgment modification in a suit brought by the Secretary. Appellee, contending that such modification is not permitted, points to the legislative history of the FLSA, which reveals Congress' desire to "relieve the courts and employers of the burden of litigating a multiplicity of suits based on the same violations of the act by an employer." S.Rep.No. 145, 87th Cong., 1st Sess., *reprinted in* [1961] U.S.Code Cong. & Ad. News 1620, 1659. This purpose, appellee argues, is embodied in the statutory scheme terminating the rights of individual employees to sue under the FLSA once the secretary's suit is commenced. Permitting employees to modify the Secretary's judgment, the argument continues, would both contravene the expressed Congressional intent and circumvent the statutory provision making the Secretary's suit the exclusive remedy.

■■■ Whatever merit these arguments may have concerning attempts by employees to intervene in an ongoing suit by the Secretary in order to assert their individual federal rights, these arguments are inapplicable to the instant case.[10] The extremely limited nature of appellants' motion is striking: it seeks only to modify a federal judgment solely to protect state claims in accordance with federal law. There is no possibility of repetitive federal suits or of an increase in Pan Am's liability under federal laws. Nor is appellants' motion an attempt to circumvent the Secretary's exclusive control of federal suits; the Secretary's suit has terminated, and appellants are not asserting individual federal rights. Significantly, the Secretary wholly supports the motion to amend.

Our conclusion that the FLSA and ADEA do not prohibit appellants from modifying the Secretary's judgment in the requested manner is fully supported by *Trbovich v. Mine Workers*, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972). In *Trbovich* the Supreme Court permitted employee intervention in an ongoing suit by the Secretary despite provisions of the Labor Management Reporting and Disclosure Act explicitly making suits by the Secretary the exclusive remedy, on the ground that limited intervention by employees did not impinge on the purposes underlying the exclusive remedy provision. *A fortiori* appellants' motion to amend is not prohibited by the FLSA and ADEA, since it merely seeks to clarify the legal effect of a final judgment already entered.

Appellants' motion to amend properly raises a claim cognizable by the federal courts. Moreover, in this case extraordinary circumstances clearly warrant such post-judgment modification. Seven years ago appellants first filed their state age discrimination complaints. Since then they have been frustrated at every turn, through no fault of their own, in their efforts to have these state claims adjudicated. All they seek now is an opportunity to litigate their state claims free from any improper preclusive effects of the federal settlement. The Secretary states, and we agree, that appellants "improperly have been denied any forum in which to present their age discrimination claims."

Accordingly, the order of the district court is reversed with directions on remand to grant appellants' motion to amend the Stipulation of Dismissal between Pan Am and the Secretary.[11]

---

**10.** To support its argument appellee cites a number of cases where courts have held the FLSA to bar intervention by employees in a lawsuit conducted by the Secretary. *Donovan v. University of Texas*, 643 F.2d 1201 (5th Cir. 1981); *Usery v. Board of Public Educ.*, 418 F.Supp. 1037 (W.D.Pa.1976); *EEOC v. A.T.&T.*, 365 F.Supp. 1105 (E.D.Ark.1973). None of these cases involved enforcement of the ADEA, which arguably places a greater emphasis on protecting the individual rights of employees than does the FLSA. *Compare* 29 U.S.C. § 621

("Congressional statement of findings and purpose" for ADEA) *with* 29 U.S.C. § 202 ("Congressional finding and declaration of policy" for FLSA).

**11.** Unlike the dissent, in our view a hearing is not required to amend the Stipulation to bring its preclusive effects clearly within the bounds of federal law. Any claim by Pan Am that the absence of a hearing is a denial of due process would necessarily be premised on its contention that in reaching the settlement it relied on

VAN GRAAFEILAND, Circuit Judge, dissenting:

This Court may overturn a district court's ruling on a Rule 60(b) motion only upon a clear showing of abuse of discretion. *Browder v. Director, Department of Corrections of Illinois*, 434 U.S. 257, 263 n.7, 98 S.Ct. 556, 560 n.7, 54 L.Ed.2d 521; *Daily Mirror, Inc. v. New York News, Inc.*, 533 F.2d 53, 56 (2d Cir.), *cert. denied*, 429 U.S. 862, 97 S.Ct. 166, 50 L.Ed.2d 140 (1976). Because I believe it is both unwise and unfair for this Court to hold that District Judge Bonsal clearly abused his discretion, just so we may explicate for New York State's Human Rights Commission what it should know to be the law, I dissent.

Judge Bonsal interpreted the language of the Rule 41 stipulation to mean that the stipulation did not bar appellants from pursuing their State claims. Magistrate Sinclair's opinion, which was adopted by Judge Bonsal, held that "any *state* claims movants may have on age discrimination grounds were merely stayed by this action, and the stipulation preserves whatever vitality they may have." (Emphasis in original.) Referring to the stipulation's ban against further litigation, the Magistrate said:

> That this provision refers only to ADEA claims, and not state claims seems quite obvious; the Secretary has absolutely no power to extinguish movants' state claims and this Court has no power over movants' state statutory rights.

My colleagues say that Judge Bonsal and Magistrate Sinclair erred and that the stipulation was in fact ambiguous. However, they do not stop there. Without a hearing, without a word of testimony from Pan American which paid the Secretary $900,000 on the basis of the stipulation as written, my colleagues now proceed to rewrite it.

In so doing, they put words in the mouths of Pan American's representatives which those representatives emphatically deny having uttered. I respectfully suggest that, in so doing, my colleagues err, not once, but twice.

A Rule 60(b) motion is considered to be "ancillary to or a continuation of the original suit." *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 78 (5th Cir.), *cert. denied*, 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970) (citing 7 Moore's *Federal Practice* ¶ 60.28[1] & [3]). Accordingly, the Rule specifically provides that only a party "or his legal representative" may seek relief under its provisions. *See National Acceptance Co. v. Frigidmeats, Inc.*, 627 F.2d 764, 766 (7th Cir. 1980); 11 Wright & Miller *Federal Practice and Procedure* § 2865, at 225–26; 7 Moore's *Federal Practice* ¶ 60.28[3], at 406. The Commission, which does not have $900,000 invested in the challenged stipulation, graciously states that it has no objection to its modification. Realizing at the same time, however, that it will be bringing other section 17 actions and attempting to make binding settlement agreements therein, the Commission argues:

> However, to the extent movants are seeking to reopen or intervene in this action, or to file a new federal ADEA action based on the same events, the Commission submits that the district court properly denied their motion to amend the stipulation of dismissal entered into by the government and Pan Am. The filing of a federal ADEA action by the government terminates the right of individual employees 'to bring an action' under the ADEA or 'to become a party plaintiff to any such action.' 29 U.S.C. 626(b), 626(c)(1); 29 U.S.C. 216(b). Thus, as the district court properly held, the movants

the Stipulation's (invalid) preclusion of appellants' state claims. However, if, as the dissent maintains, the Stipulation was unambiguous and did not affect the state claims, any such claim of reliance would be wholly untenable. Moreover, such a claim would be belied by Pan Am's failure to renegotiate the settlement when the court below declared that the Secretary had no power to settle state claims. In any event,

it is highly doubtful whether the due process protection extends to those who unsuccessfully attempt to achieve an unauthorized result. We also note that Pan Am did *not* advance on appeal the arguments it made below that as a matter of federal law the Stipulation validly bars state claims and that this was the basis of the settlement.

have no standing to challenge the settlement between the Department of Labor and Pan Am because they were neither parties in the government's suit nor in privity with the government. (EEOC's Brief at 8.)

The Commission cannot have it both ways. If my colleagues are not permitting appellants to reopen or intervene in the litigation between the Commission and Pan American by seeking and securing an amendment of the Rule 41 stipulation, I am at a loss to know what they are permitting appellants to do. The majority establish a bad precedent when they permit appellants to challenge the two-year-old dismissal with prejudice of a suit in which appellants could not have participated. 29 U.S.C. § 626(c); *See Western Steel Erection Co. v. United States*, 424 F.2d 737, 739 (10th Cir. 1970).

My colleagues establish an equally bad precedent when they order an amendment of the Rule 41 stipulation without first having given Pan American a proper hearing. *Federal Deposit Insurance Corp. v. Alker*, 234 F.2d 113, 116–17 (3d Cir. 1956). "[A] dismissal with prejudice is a final judgment on the merits", *Cleveland v. Higgins*, 148 F.2d 722, 724 (2d Cir.), *cert. denied*, 326 U.S. 722, 66 S.Ct. 27, 90 L.Ed. 428 (1945), and "a court cannot deprive a successful party of his judgment without a proper hearing", *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447 (1946). *See Klapprott v. United States*, 336 U.S. 942, 69 S.Ct. 384, 93 L.Ed. 1099 (1949).

My quarrel with the majority may be summarized briefly. If 29 U.S.C. § 626(c)(1) permits of more than one interpretation of the Rule 41 stipulation, my colleagues are depriving Pan American of due process by amending the stipulation over Pan American's objection without giving it the benefit of a full and proper hearing. If section 626(c)(1) permits of only one interpretation of the stipulation, there is no need for my colleagues to amend it.

There may be a rare occasion when a hard case should be permitted to make bad

law. This is not one of them. If the New York State Human Rights Commission has misinterpreted the law, I have full confidence in both the willingness and ability of the New York State courts to see that the error is corrected.