CRUICKSHANK & CO., LIMITED and Pestonjee Bhicajee (Kutch), Plaintiffs,

v.

DUTCHESS SHIPPING CO., LTD., International Ship Management, Inc., and Stavros K. Sorros, Defendants.

No. 82 Civ. 4026 (MJL).

United States District Court,
S.D. New York.

March 21, 1986.

Healy & Baillie by John C. Koster, Michael P. Kaelin, New York City, for plaintiffs.

Poles, Tublin, Patestides & Stratakis by Gregory J. Ligelis, New York City, for defendants.

Oestreicher & Ennis, White Plains, N.Y., for John Moscahlaides, non-party movant.

Goodstein & West, New Rochelle, N.Y., for Maria and Elias Pateras, non-party movants.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

The case at bar is, in the words of the Second Circuit, a "strange admiralty case." The facts of the case are stated in the opinion of the Second Circuit, *Cruickshank & Co., Ltd. v. Sorros*, 765 F.2d 20 (1985), but will be repeated here in brief detail. While familiarity with the Second Circuit's opinion is assumed, we add what we believe is the appropriate light in which to view those facts.

The plaintiffs are Indian stevedors. Defendant Dutchess Shipping Co. ("Dutchess") was the owner of the ship, the M/T IRINIO ("IRINIO"). Codefendant International Ship Management, Inc. ("ISM") (hereinafter Dutchess and ISM will sometimes be collectively referred to as "the corporate defendants") acted as operation manager of the IRINIO. The third defendant Stavros K. Sorros ("Sorros") is a Captain and an employee of ISM.

The dispute centers around the voyage of the IRINIO to India. The plaintiffs were to act as agents for ISM in India. By way of a chain of events which need not be

repeated IRINIO incurred over $140,000 in so-called "pull-back" charges. There is considerable dispute as to who ultimately should bear these costs. Suffice to say that plaintiffs were instructed by the Indian port authorities not to allow the IRINIO to sail until these charges were settled. The plaintiffs then sought an order of arrest against the IRINIO. The defendants were undoubtedly aware of this and Sorros was warned not to "try any funny tricks, otherwise you let put us into trouble. [sic]" Tr. 37.

Defendants' reaction was among the most egregious conduct this Court has ever encountered. The defendants caused the IRINIO to slip out of port under cover of darkness (4:00 a.m.), without port clearance and in direct contravention of the Indian authorities. A few hours later without knowing that the ship had left, the Indian court issued a formal injunction ordering the master not to leave port.[1]

The ship then bypassed its next port of call—Singapore—because instructions had been sent to arrest the vessel. Instead the IRINIO sailed to Taiwan where it was precipitately scrapped.

As a result of defendants' conduct the plaintiff's stevedoring license was lifted for a year and he was forced to post a bond for the pull-back charges. The defendants were undoubtedly aware that their conduct put plaintiffs license and business reputation in grave jeopardy.

The corporate defendants made a considered default as to liability. After trial as to damages the court assessed the corporate defendants $1,009,619.65. The Court also found Sorros liable jointly and severally for the judgment. Sorros appealed while the corporate defendants chose not to appeal.

The Second Circuit reversed the judgment against Sorros, holding that there were no grounds for holding him liable for the corporations' actions. The Court of

---

**1.** Because the port involved was very remote, the injunction had to be sought from a court some considerable distance from the port.

Appeals explicitly did not reach the question of the "propriety of the judgment entered against" the corporate defendants. 765 F.2d at 26.

A group of directors and officers of Dutchess and/or ISM now seek relief from judgment pursuant to Fed.R.Civ.P. 60(b). They are represented by two law firms which did not previously represent the corporate defendants. For the reasons stated below we deny the motion for relief from judgment.[2]

### Discussion

#### (a) The Motion pursuant to Fed.R.Civ.P. 60(b)

##### (1) Standing

As an initial matter the plaintiffs challenge the standing of the various officers and directors of Dutchess and/or ISM to make such a motion. The officers and directors assert that they have standing to prosecute the 60(b) motion because, pursuant to a pending state court proceeding, they may be held personally liable for the debts of the corporate defendants. They argue that the state court will give full faith and credit to this court's judgment, thus they should be allowed to assert the 60(b) motion.

In support of their argument, the officers and directors rely on *Dunlop v. Pan American World Airways, Inc.*, 672 F.2d 1044 (2d Cir.1982). In that case non-party movants sought to have a stipulation of settlement between the Secretary of Labor and the movant's employer amended to make clear that the settlement did not prejudice the rights of the individual employees to pursue their own actions. The Second Circuit reversed the district court's holding that the movants did not have standing under Rule 60(b). The Second Circuit held that "[a]lthough, Rule 60(b)(6) would not ordinarily be available to non-parties to modify final judgments, we hold that on the facts of this case appellants were sufficiently connected and identified with the

Secretary's suit to entitle them to standing to invoke Rule 60(b)(6)." 672 F.2d at 1052. However, in reaching its holding, the Court of Appeals stressed the limited nature of the relief sought by the movants and inferred that broader relief would not be available to non-parties under Rule 60(b). *Id.* at n. 8.

In the instant case the movants have asserted a strong interest in the outcome of this litigation. While *Dunlop* may not dictate that movants have standing, we do not believe it is necessary to reach a holding on this question since as discussed fully below, there are no grounds for the requested relief. Accordingly, we will reach the merits of the motion.

##### (2) Relief Under Rule 60(b)(5)

■ The movants seek relief under Rule 60(b)(5) and 60(b)(6). As an initial matter it should be noted that relief under Rule 60(b)(5) and Rule 60(b)(6) are mutually exclusive. *In re ASUSA*, 47 B.R. 928, (S.D. N.Y.1985). Rule 60(b)(5) provides relief from a judgment when "a prior judgment on which it is based has been reversed or otherwise vacated." Movants claim that 60(b)(5) should be interpreted to allow vacature of the judgment against the corporate defendants. In support of their argument they rely heavily on *Werner v. Carbo*, 731 F.2d 204 (4th Cir.1984).

In *Werner*, the plaintiff sued his doctor Ralph Carbo, Jr., M.D., and the doctor's Professional Corporation, Ralph J. Carbo, Jr., M.D., P.A., for medical malpractice. From an adverse judgment the doctor appealed, but he failed to name his professional corporation as an appellant. The Court of Appeals reversed. The plaintiff then attempted to enforce the judgment against the professional corporation. The corporation moved for relief under 60(b)(5), but the district court denied the motion. The Court of Appeals again reversed. The court noted the nearly perfect identity of interest between Carbo and his corporation and quoted from the jury charge that "[i]f

---

**2.** The counsel of record for ISM moves for an order pursuant to local rule 3(c) allowing them

to withdraw as counsel. As discussed, *infra,* this motion will be granted.

you find that Dr. Carbo is liable to the Plaintiff, then I instruct you to find that the corporation is also liable to the plaintiff *to the same extent as Dr. Carbo*". 731 F.2d at 206 [emphasis added]. The court went on to state:

> Werner claims that this is simply a case of counsel error in failing to take an appeal, which thus falls under the "mistake, inadvertence, surprise, or excusable neglect" rubric of 60(b)(1) and which must fail because not brought as required within one year after judgment was entered. We agree that as a general principle a 60(b) motion may not substitute for a timely and proper appeal. *DeFilippis v. United States*, 567 F.2d 341, 342 (7th Cir.1977). The events that followed entry of judgment against the professional corporation however, produced an extraordinary situation which cannot fairly or logically be limited to the neglect category of Rule 60(b). *See, Klapprott v. United States*, 335 U.S. 601[, 69 S.Ct. 384, 93 L.Ed. 266] (1949) (plurality opinion of the court).

*Id.* at 207.

Far from supporting movants' argument, *Werner* is either wholly distinguishable from the case at bar or supportive of plaintiffs' argument. The case is distinguishable from the instant case because the identity of interest between the corporate defendants and Sorros is far less than that of a doctor to his professional corporation. The professional corporation is in many ways a simple alter ego of the doctor—unlike a regular corporation which shields its stockholders from personal liability.

Moreover, *Werner* correctly states the general rule that "a 60(b) motion may not substitute for a timely appeal." *Id.* In the case at bar the corporate defendants made a considered default as to liability and then made a considered decision not to appeal. This is unquestionably a very different situation than the narrow exception of *Werner*. The movants may not now use Rule 60(b) to do what the defendants chose not to do—appeal. Rule 60(b)(5) provides no ground for relief.

### (3) *Relief Under 60(b)(6)*

The movants also seek relief under Rule 60(b)(6) which provides for vacatur of a judgment when equity requires. *United States v. Cirami*, 563 F.2d 26 (2d Cir.1977). However, "[i]f a party makes a conscious and informed choice of litigation strategy, he cannot seek extraordinary relief merely because his assessment of the consequences was incorrect." *In re Master Key Antitrust Litigation*, 76 F.R.D. 460, 464 (D.Conn.1977), *aff'd without opinion*, 580 F.2d 1045 (2d Cir.1978).

In support of their claim under 60(b)(6) movants again look to *Werner* and to the 1932 case of *Maryland Casualty Co. v. City of South Norfolk*, 54 F.2d 1032 (4th Cir.1932), *modified on other grounds*, 56 F.2d 822 (4th Cir.1932), *cert denied*, 286 U.S. 562, 52 S.Ct. 644, 76 L.Ed. 1295 (1932). We find no support for their contention in either of these cases. In *Maryland Casualty* the appealing and non-appealing defendants all had the same interest, (*Maryland Casualty*, at 1039), which is not also in the case at bar. The Court in *Werner* stressed the extremely limited nature of its holding:

> We emphasize that our ruling is very narrow. The motion was timely made; no unfair prejudice was shown, exceptional circumstances were present, the rights of no third parties have intervened, and the judgment against the professional corporation was wholly derivative of, coexistant with, and limited by the judgment against Carbo.

731 F.2d at 209.

We find the Supreme Court's opinion in *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950), far more instructive. The petitioner in *Ackermann* sought relief from a judgment entered in the district court cancelling his citizenship. The district court judgment was entered after a consolidated trial involving the petitioner, his wife, and one Keilbar. Separate judgments cancelling the citizenship of the respective defendants were entered on the same day. Keilbar appealed but the peti-

tioner and his wife did not. The judgment against Kielbar was reversed.

The petitioner alleged that he could show that the judgment entered against him was erroneous based on the reversal of the judgment entered against Kielbar. He further alleged that he did not appeal from the judgment entered against him because his attorney advised him that he would have to sell his home in order to bear the costs, and an official of the Immigration and Naturalization Department advised him that he would be released at the end of the war. In fact, after the time to appeal had expired, petitioner and his wife were interned, and on January 25, 1946, the Attorney General ordered them to leave the Country within thirty days or be deported.

The Supreme Court held that these circumstances did not provide a basis for relief under rule 60(b)(6). In doing so the Supreme Court focused on the fact that the petitioner made a conscious, voluntary decision not to appeal. It stated:

> Petitioner made a considered choice not to appeal, apparently because he did not feel that an appeal would prove to be worth what he thought was a required sacrifice of his home. His choice was a risk, but calculated and deliberate and such as follows a free choice. Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong, considering the outcome of the *Keilbar* [*v. U.S.*, 144 F.2d 866] case. There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.

340 U.S. at 198, 71 S.Ct. at 211.

This same reasoning has been applied where a party has appeared in an action, but subsequently defaults in the course of the proceeding. *See Bell Telephone Laboratories, Inc. v. Hughes Aircraft Co.*, 73 F.R.D. 16 (D.Del.1976); *Bratnober v. Illinois Farm Supply Co.*, 169 F.Supp. 85 (D.Minn.1958).

Accordingly, there are no grounds for relief under Rule 60(b). In reaching this result we need not consider the specific arguments of movants as to why some elements of the damage assessment are inappropriate in light of the Second Circuit's opinion. We hold that the corporate defendants made a considered default and a considered decision not to appeal. The officers and directors may not now seek relief from the decision not to appeal "merely because [their] assessment of the consequences was wrong." *Master Key*, 76 F.R.D. at 464; *see also, Ackermann*, 340 U.S. 198, 71 S.Ct. at 211. We do note, however, that the reasoning of the Second Circuit is not applicable to the corporate defendants. We also believe that to the extent that the decision lies within our discretion, the egregious facts of the case dictate that our discretion be exercised against the defendants. We therefore deny the movants' application under Rule 60(b).

(b) *The Motion to Withdraw as Counsel*

■ The law firm of Poles, Tublin, Patestides and Stratakis ("PTP & S") are counsel of record for all three defendants, although defendant Sorros retained PTP & S independently. Ligelis Aff. ¶ 5. PTP & S now seeks to withdraw as counsel for the corporate defendants. In support of their motion, PTP & S asserts that they have not been in contact with the corporate defendants in over a year and that they have not participated in any way with the prosecution of the Rule 60(b) motion. They also point out that the two firms who represent the Rule 60(b) movants will adequately protect the corporate defendant's interest.

Because this case is closed and the time to appeal has passed the corporation can suffer no prejudice by allowing the withdrawal. In New York state, the normal consequence of allowing counsel to a corporate defendant to withdraw is to place the corporation in default, but in the case at bar the corporation has already made a considered default. Accordingly we grant the motion to withdraw as counsel. We will, however, stay the withdrawal for 10 days to allow for substitution of counsel if the corporation so elects. PTP & S is

directed to serve notice of its withdrawal along with a copy of this order on the corporate defendants as best as is reasonably possible. We also believe that the appearance of the non-party movants' counsel should be noted on the docket.

### (c) *Petition for Writ of Execution*

 Counsel for plaintiffs attempted to secure a Writ. of Execution on the judgment in this case from the Clerk of the Court. However, apparently the official docket sheet of the case as well as some of the records were misplaced either during its transmission back from the Court of Appeals or once it was received by the Clerk of this Court. The Clerk is now diligently trying to locate the missing material, but because of the loss the Clerk has declined to perform what is normally a ministerial function of issuing the Writ. The apparent rationale for this refusal is that without the docket sheet the Clerk cannot certify the entry of the judgment and the fact that it has not been appealed.

The plaintiffs' counsel has presented the Court with a petition for an order to the Clerk directing him to issue the Writ. It is clear that plaintiff has a right to this relief. Accordingly the Clerk of the Court is directed to prepare an adequate substitute docket sheet or take whatever steps are necessary to permit the issuance of the Writ on the judgment. The firms involved in this litigation, including PTP & S are directed to assist in any way possible in the preparation of the substitute docket. The Clerk is to issue all necessary Writs of Execution for plaintiff against the corporate defendants.

### Conclusion

The non-party movants' motion pursuant to Rule 60(b) is denied. PTP & S's motion to withdraw as counsel for the corporate defendants is granted. Ten days from the date of entry of this order the Clerk of the Court is to strike the appearance of Poles, Tublin, Patestides & Stratakis as counsel for defendants Dutchess Shipping Co., Ltd. and International Ship Management, Inc.,

from the docket of this case, but Poles Tublin's appearance as counsel for defendant Sorros should be retained. The Clerk shall enter the appearances of Goodstein & West as attorneys for non-party movants Maria and Elias Pateras and Oestreicher & Ennis as counsel for non-party movant John Moscahlaides onto the docket. The Clerk shall issue all necessary Writs of Execution on the judgment against the corporate defendants.

It Is So Ordered.